## LUTHER BEECHER ET AL. v. EDWARD A. BUSH ET AL.

### *Constructive partnership.*

A partnership cannot be implied, as matter of law, from a business relation, if the parties thereto have not made or intended to make a partnership contract and if they have done nothing to estop them from denying the existence of a partnership.

Partnership involves community of interest in some lawful commerce or business for the conduct of which the parties are mutually agents for each other but with general powers within the scope of the business, which powers they can restrict by agreement to the extent of making one the sole agent of the rest and of the business.

An arrangement by which one man "hires the use" of another's building from day to day and opens and keeps it as a hotel, paying the owner daily a sum "equal to one-third of the gross receipts and gross earnings," does not of itself constitute them partners.

There can be no such thing as a partnership as to third persons when there is none as between the parties themselves, and third persons have not been misled by concealment of facts or by deceptive appearances.

The test of partnership, as between the parties themselves, is their intent.

Participation in profits does not of itself make one a partner.

Error to Superior Court of Detroit. Submitted October 29, 1880. Decided January 12, 1881.

ASSUMPSIT. Defendant brings error. Reversed.

*Henry M. Cheever* (*John Atkinson* and *Jos. P. Whittemore* with him) for plaintiffs in error. Community of interest in the profits is the only essential to a partnership (Lindley on Partnership, 10); an agreement to carry on the business and divide the gross earnings equally does not constitute a partnership as to third persons: *Ambler v. Bradley* 6 Vt. 119; so also where the share of gross earnings was to be paid as compensation: *Dry v. Boswell* 1 Camp. 330; nor does a share in profits as compensation for services make one a partner: *Reed v. Murphy* 2 Greene (Ia.) 574; nor an agreement to pay, instead of a commission, the entire proceeds of a sale less a certain proportion: *Benjamin v. Porteus* 2 H. Bl. 590; nor an agreement to divide profits with a broker on a sale made by him of wheat bought with the money of the other party: *Hanna v. Flint* 14 Cal. 74; nor an agreement to share gross returns: *Gibson v. Lupton* 9 Bing. 297 (23 E. C. L. 588); *French v. Styring* 2 C. B. (N. S.) 357; *Mair v. Glennie* 4 M. & S. 240; *Wilkinson v. Frasier* 4 Esp. 182; nor an agreement to share or divide either profits or returns: *Blanchard v. Coolidge* 22 Pick. 151; *Cutler v. Winsor* 6 Pick. 335; *Denny v. Cabot* 6 Met. 82; *Turner v. Bissell* 14 Pick. 192; *Newman v. Bean* 21 N. H. 93; *Miller v. Van Beuren* 15 S. & R. 137; *Hodges v. Dawes* 6 Ala. 215; *Ogden v. Astor* 4 Sandf. 311; *Vanderburgh v. Hull* 20 Wend. 70; *Burckle v. Eckhart* 3 Comst. 132; *Bradley v. White* 10 Met. 303; *Polk v. Buchanan* 5 Sneed 722; *Moore v. Smith* 19 Ala. 774; *Bull v. Schuberth* 2 Md. 38; *Bowman v. Bailey* 10 Vt. 170; *Fawcett v. Osborn* 32 Ill. 411; *Rawlinson v. Clarke* 15 M. & W. 292; *Barklie v. Scott* 1 Huds. & Br. 83; *Stocker v. Brockelbank* 3 Mac. & G. 250; nor an agreement to pay a mate a specific share of the profits of the voyage: *Coffin v. Jenkins* 3 Story 108; *Wilkinson v. Frasier* 4 Esp.

182; *Baxter v. Rodman* 3 Pick. 435; *Rice v. Austin* 17 Mass. 197; nor an agreement to furnish a farm with teams and labor, and to give labor, manage the farm, and divide the crop: *Blue v. Leathers* 15 Ill. 31; nor to furnish manufactured merchandise at prices to be paid out of the proceeds, the manufacturer to find the labor and material and receiving as compensation for his skill and the rent of a storehouse a commission of fifty per cent. on the net profits of the sale: *Dunham v. Rogers* 1 Penn. St. 255; a distinction between profits, as such, and the payment of a sum equal to a share of the profits is made in *Brockway v. Burnap* 16 Barb. 309; there must be such a vested interest in profits as will entitle one to an accounting, to constitute a partnership, and this is not found when a party is only entitled to compensation in proportion to a certain share in the profits: *Heimstreet v. Howland* 5 Den. 68; *Catskill Bank v. Gray* 14 Barb. 471; *Champion v. Bostwick* 18 Wend. 175; *Stocker v. Brockelbank* 5 E. L. & E. 67; *Loomis v. Marshall* 12 Conn. 69; *Hodgman v. Smith* 13 Barb. 302; Gow on Partnership 19; Story on Partnership 59 *et seq.;* the distinction between a share in the receipts or profits, and a compensation measured by receipts or profits, is admitted by Lord Eldon, in *Ex parte Hamper* 17 Ves. 404, and appears in *Denny v. Cabot* 6 Met. 82; 1 Pars. Cont. 161, n.; an agreement to receive for rent a portion of the profits of a hotel leased to another does not make a partnership: *Perrine v. Hankinson* 6 Halst. 181; *Holmes v. Old Colony R. R. Co.* 5 Gray 58; one who shares in the profits, though not in the losses, is a partner as to third persons, as creditors are thereby deprived of part of the means of payment: *Hinman v. Littell* 23 Mich. 484; *Sager v. Tupper* 38 Mich. 265; where one owning land contracted with another to cut posts on the lands at his own expense, on shares, the owner of the land receiving half the posts, no inference of a partnership could be drawn: *St. Denis v. Saunders* 36 Mich. 369; and there was none where hay was delivered to be carried to market and sold at not less than a fixed price, out of which the seller was to take a specified portion and pay the balance to the owner,

but if sold for more. the balance was to be equally divided : *Morrison v. Cole* 30 Mich. 102; and where a firm contracted to get out lumber during a specified season for a person who was to receive a fixed proportion of the net profits of the job, above expenses, the parties were not partners, as to third parties, in an action brought for supplies furnished to the firm, if at all, except during the time they were getting out the lumber : *Hall v. Edson* 40 Mich. 651.

*William B. Jackson* and *C. I. Walker* for defendants in error. A partner is liable, though the fact of partnership be unknown and credit be given solely to the ostensible partners : Story on Partnership 363; Collyer on Partnership 384, 537; Parsons on Partnership 62 and note; *Bromley v. Ellis* 38 N. H. 302, 306; *Parker v. Canfield* 37 Conn. 254; *Cox v. Hickman* 8 H. of L. Cas. 273; *Pratt v. Langdon* 97 Mass 94; and even if the ostensible partner had agreed with the dormant partner to contract no debts : Story on Partnership § 126; *Everitt v. Chapman* 6 Conn. 347; *Hickman v. Cox* 3 C. B. (N. S.) 553.; *Judge v. Braswell* 13 Bush (Ky.) 67; persons who may not have intended to be partners, and may have expressly agreed that they would not become so, may be made partners, so far as third persons are concerned, by the very terms of their agreement : Parsons on Partnership 58 n., 86–7; Collyer on Partnership §§ 78, 83; *Hinman v. Littell* 23 Mich. 486; *Manhattan Brass Mfg. Co. v. Sears* 45 N. Y. 797; *Leggett v. Hyde* 58 N. Y. 278; *Parker v. Canfield* 37 Conn. 252; *Pooley v. Driver* L. R. 5 Ch. Div. 483; if one receive a portion of the gross proceeds, rather than a portion of the net proceeds, he is still a partner : Parsons on Partnership 88, 91 n.; *Waugh v. Carver* 2 H. Bl. 235; *Cheap v. Cramond* 4 B. & Ad. 663; *Musier v. Trumpbour* 5 Wend. 274; *Champion v. Bostwick* 18 Wend. 175; *Farmers' Insurance Co. v. Ross* 29 Ohio St. 429; *Eastman v. Clark* 53 N. H. 284–5; nor is it necessary to a partnership that each should bear the loss, if any be incurred : Parsons on Partnership 41,102; Story on Partnership 23, 32 n., 55; *Sager v. Tupper* 38 Mich. 265; sharing the profits has been

made the test of copartnership, so far as applicable to dormant and secret partners: *Grace v. Smith* 2 W. Bl. 998; but this doctrine has been greatly modified: *Cox v. Hickman* (1860) 8 H. L. Cas. 273; *Bullen v. Sharp* (1865) L. R. 1 C. B. 102, 109; *Pooley v. Driver* (1876) L. R. 5 Ch. Div. 458; *Ex Parte Tennant* (1877) 6 Ch. Div. 303; *Ex Parte Delhasse* (1878) 7 Ch. Div. 511; *Hart v. Kelley* 83 Penn. St. 286; *Harvey v. Childs* 28 Ohio St. 319; *In Re Francis* 2 Sawyer 286; *Boston Smelting Co. v. Smith* 11 Cent. L. J. 211; contra: *Leggett v. Hyde* (1874) 58 N. Y. 281; *Hinman v. Littell* 23 Mich 486; *Sager v. Tupper* (1878) 38 Mich. 265; it is conceded that if one receives a portion of the profits of a business simply in compensation for services, he does not thereby become a partner: Parsons on Partnership 58 n., 68, 70; *Parker v. Canfield* 37 Conn. 266; *Bullen v. Sharp* L. R. 1 C. B. 124, 125; nor if he rent land or a hotel to another, and receive *for rent* a certain proportion of the gross proceeds, or of the net profits: Parsons on Partnership 143, 144; *Perrine v. Hankinson* 6 Halst. 181; *Blue v. Leathers* 15 Ill. 31; *Holloway v. Brineley* 42 Ga. 226; but wherever it is apparent from the nature of the contract, that the landlord is endeavoring to obtain the advantages of a copartnership without incurring its liabilities, the contract will be held one of partnership: Parsons on Partnership 80, 143, 144 and note; *Tibbatts v. Tibbatts* 6 McL. 80; *Catskill Bank v. Gray* 14 Barb. 471: *Allen v. Davis* 13 Ark. 28; *Dalton City Co. v. Dalton Mfg. Co.* 33 Ga. 253; *Adams v. Carter* 53 Ga. 160; *Brownlee v. Allen* 21 Mo. 123; *Rowland v. Long* 45 Md. 439.

CooLEY, J. The purpose of the action in the court below was to charge Beecher as partner with Williams for a bill of supplies purchased for the Biddle House in Detroit. The facts are all found by special verdict, and are few and simple. Beecher was owner of the Biddle House, and Williams proposed in writing to "hire the use" of it from day to day, and open and keep it as a hotel. Beecher accepted his proposals and Williams went into the house and began business, and in

the course of the business made this purchase. The proposals are set out in full in the special verdict.

The question is whether by accepting the proposals Beecher made himself a partner with Williams in the hotel business; and this is to be determined on the face of the writing itself. It is conceded that Beecher was never held out to the public as a partner, and that the bill of supplies was purchased on the sole credit of Williams and charged to him on the books of the plaintiffs below. The case, therefore, is in no way embarrassed by any questions of estoppel, for Beecher has done nothing and suffered nothing to be done which can preclude him from standing upon his exact legal rights as the contract fixed them.

Nor do we understand it to be claimed that the parties intended to form a partnership in the hotel business, or that they supposed they had done so, or that either has ever claimed as against the other the rights of a partner. It is perfectly clear that many things which are commonly incident to a partnership, these parties meant should be wholly excluded from their arrangement. Some of these were of primary importance. It is plain, for example, that Beecher did not understand that his credit was to be in any way involved in the business, or that he was to have any interest in the supplies that should be bought, or any privilege to decide upon them, or any legal control whatever until proceeds were to be divided, or any liability to losses if losses were suffered. These are among the most common incidents to a partnership; and while some of them, and possibly all of them, may not be necessary incidents, yet the absence of all is very conclusive that the parties had no purpose whatever to form a partnership, or to give to each other the rights and powers, and subject each other to the obligations of partners. In general this should be conclusive. If parties intend no partnership the courts should give effect to their intent, unless somebody has been deceived by their acting or assuming to act as partners; and any such case must stand upon its peculiar facts, and upon special equities.

It is nevertheless possible for parties to intend no partner-

45 MICH.—13

ship and yet to form one. If they agree upon an arrange-
ment which is a partnership in fact, it is of no importance
that they call it something else, or that they even expressly
declare that they are not to be partners. The law must
declare what is the legal import of their agreements, and
names go for nothing when the substance of the arrangement
shows them to be inapplicable. But every doubtful case
must be solved in favor of their intent; otherwise we should
" carry the doctrine of constructive partnership so far as to
render it a trap to the unwary." Kent, C. J., in *Post v.
Kimberly* 9 Johns. 470, 504.

We have then a case in which the party it is sought to
charge has not held himself out, or suffered himself to be
held out as a partner either to the public at large or to the
plaintiff, and has not intended to form that relation. He is
not therefore a partner by estoppel nor by intent; and if he
is one at all, it must be by construction of law.

What then are the *indicia* of partnership in this case; the
marks which force that construction upon the court irre-
spective of the intent of the parties; that in fact control their
intent, and give to the parties bringing suit rights which they
were not aware of when they sold the supplies?

In the elaborate and able brief which has been presented
in behalf of the defendants in error it is conceded that the
fact that Beecher was to receive each day a sum " equal to
one-third of the gross receipts and gross earnings" for the
day, would not necessarily make him a partner. What is
claimed is that the fact is " cogent evidence" that Beecher
was to participate in the results of the business in a manner
that indicated he was a principal in it, and was not receiving
compensation for the use of property merely. The view of
the law here suggested is undoubtedly correct. There may
be a participation in the gross returns that would make the
receiver a partner, and there may be one that would not. The
question is in what capacity is participation had. Gross
returns are not profits and may be large when there are no
profits, but it cannot be predicated of either gross returns or
profits that the right to participate is conclusive evidence of

partnership. This is settled law both in England and in this country at this time, as is fully shown by the authorities cited for the defendants in error. It was recognized in *Hinman v. Littell* 23 Mich. 484; and in New York, where the doctrine that participation in profits proves partnership has been adhered to most closely, it is admitted there are exceptions. *Eager v. Crawford* 76 N. Y. 97.

But we quite agree with counsel for defendants in error that no case ought to turn upon the unimportant and mere verbal distinction between the statement in the papers that Beecher was to have a sum " equal to " one-third of the gross receipts and gross earnings, and a statement that he was to have one-third of these receipts and earnings. It is perfectly manifest it was intended he should have one-third of them; that they should be apportioned to him regularly and daily, and not that Williams was to appropriate the whole and pay a sum " equal to " Beecher's proportion when it should be convenient. We can conceive of cases where the difference in phraseology might be important, because it might give some insight into the real intent and purpose of the parties, and throw light upon the question whether that which was to be received, was to be received as partner or only by way of compensation for something supplied to the other, but the intent in this case is too manifest to be put aside by any mere ingenuity in the use of words. *Loomis v. Marshall* 12 Conn. 69, 79.

In *Cox v. Hickman* 8 H. L. Cas. 268, 306, Lord Cranworth stated very clearly his views of what should be the test of partnership. " It is often said," he says, " that the test, or one of the tests whether a person not ostensibly a partner, is nevertheless in contemplation of law a partner, is whether he is entitled to participate in the profits. This no doubt is in general a sufficiently accurate test; for a right to participate in profits affords cogent, often conclusive evidence, that the trade in which the profits have been made was carried on in part for or on behalf of the person setting up such a claim. But the real ground of the liability is that the trade had been carried on by persons acting on his behalf. When

that is the case, he is liable on the trade obligations, and entitled to its profits, or to a share of them. It is not strictly correct to say that his right to share in the profits makes him liable to the debts of the trade. The correct mode of stating the proposition is to say that the same thing which entitles him to the one makes him liable to the other, namely, the fact that the trade has been carried on in his behalf, *i. e.*, that he stood in the relation of principal towards the persons acting ostensibly as the traders, by whom the liabilities have been incurred, and under whose management the profits have been made." There is something understandable by the common mind in this test; there is nothing artificial or arbitrary about it; it falls in with reason and enables every man to know when he makes his business arrangements whether he runs the risk of extraordinary liabilities contracted without his consent or approval.

It is said, and we believe justly, in *Bullen v. Sharp* L. R. 1 C. B. 86, that the decision in *Cox v. Hickman* brought back the law of England to what it should be, and Mr. Baron Bramwell, referring to what was declared to be law in *Waugh v. Carver* 2 H. Bl. 235, expressed the hope " that this notion is overruled," adding that it is " one which I believe has caused more injustice and mischief than any bad law in our books." p. 128. It is certainly overruled very conclusively in Great Britain. *Kilshaw v. Jukes* 3 B. & S. 847; *Shaw v. Gault* 16 Irish C. L. R. 357; *Holme v. Hammond* L. R. 7 Exch. 218; *Ex parte Delhasse* 7 Ch. Div. 511. And though in New York the courts, hampered somewhat by early cases, have not felt themselves at liberty to adopt and follow the decision in *Cox v. Hickman* to the full extent, it would be easy to show that the American authorities in the main are in harmony with it. Indeed that is very well shown in *Eastman v. Clark* 53 N. H. 276, where the authorities are collated. It must be admitted, however, that the attempts at an application of the test to the complicated facts of particular cases have not been productive of harmonious results. A few cases may be mentioned which in their facts have a resemblance, more or less strong, to the one before us.

*Champion v. Bostwick* 18 Wend. 175, was a case where parties who were severally owners of horses and stages on different parts of one stage line made an arrangement that the fares received by both should be divided between them in proportions agreed upon. This was held to constitute them partners, so that a third person injured by the carelessness of a driver employed by one might bring suit for the negligence of all. But in the somewhat similar case of *Eastman v. Clark* 53 N. H. 276, the conclusion of partnership or no partnership, it was said, must be drawn as one of fact. " The real and ultimate question," says Smith, J. (p. 289), "in all cases like the present, is one of agency. Did the person sought to be charged stand in the relation of principal to the person contracting the debt ? Participation in the profits is not decisive of that question, ' except so far as it is evidence of the relation of principal and agent between the persons taking the profits and those actually carrying on the business.' Whether such relation existed is a question of fact. * * * There is no sound foundation for an arbitrary rule of law requiring courts or juries to regard participation in the profits as a decisive test which will in all instances necessitate the conclusion that the participator is liable for the debts."

In *Farmers' Ins. Co. v. Ross* 29 Ohio St. 429, it appeared that by arrangement one party furnished the ground and the material for making brick, and also the fuel, and another was at the expense of burning the brick. The brick were then to be divided, the former receiving one-fourth and the latter three-fourths, and the latter was also to pay the former ten dollars on each one hundred thousand bricks. This was held to create a partnership, and *Musier v. Trumpbour* 5 Wend. 274, and *Everitt v. Chapman* 6 Conn. 347, were relied upon as authority.

The New York cases might support this decision, but the case of *Loomis v. Marshall* 12 Conn. 69, can hardly be considered in accord with it. The facts were these: B. had a cloth factory. A. agreed with him to furnish a full supply of wool for two years, B. to devote the factory for two years

exclusively to manufacturing, and the net proceeds, after deducting the incidental expenses and costs of sale, were to be divided in the proportion of 55 per centum to A. and 45 per centum to B., and the cost of manufacture was to be shared in like proportion. This was held no partnership. Says Huntington, J.: "This community of profit is the test to determine whether the contract be one of partnership; and to constitute it, a partner must not only share in the profits, but share in them as a principal; for the rule is now well established that a party who stipulates to receive a sum of money in proportion to a given quantum of the profits, as a reward for his labor, is not chargeable as a partner." And of the share set off to B. he says it "is not expressed in terms to be for such compensation; but this is its legal meaning." pp. 77, 79. *Moore v. Smith* 19 Ala. 774; *Bowman v. Bailey* 10 Vt. 170, and *Price v. Alexander* 2 Greene (Ia.) 427, may be referred to for similar views.

One of Chief Justice Gibson's short but very lucid opinions is in point here. Between Bronson, a manufacturer, and Dunham, a country merchant, there was an agreement that the former should furnish wooden handles made to order to the latter, at a tariff of prices to be paid out of the store, on the proceeds of the handles; Bronson finding the labor ; nd stuff, and receiving a further compensation for skill and the rent of the store-house, in the form of a commission of fifty per centum on the net profits of the whole. It was sought to charge Dunham as a partner with Bronson for the price of raw material the latter had bought. Upon these facts it is said: "Now, it has been so often and so invariably ruled in England and America, that a commission on profits is not such an interest in the concern as constitutes partnership, that the point is at rest. What staggers the mind in this instance is the apparent shallowness of the distinction when it is considered that a commission of fifty per cent. is no more nor less than an equal division of the profits; but it must not be forgotten that the distinction is an arbitrary one, resting on authority, not principle; and that, whatever be the proportion, the relation produced by a compensation

in the form of a commission is in every instance the same. But by the terms of the contract Bronson and not Dunham was to procure and pay for the stuff; and they were not to be partners in that part of the business. This provision I admit would be inoperative against strangers, if the parties had held themselves out to the public as partners, both in buying and selling; but assuming for the moment, that there was indeed a partnership in the handles when furnished, and in the store when stocked with goods, yet it is to be borne in mind that the handles as well as the store-goods, were to be put into the concern as separate contributions to the joint-stock; and that, as the stuff for the handles was to be procured by Bronson it was consequently to be paid for by him, just as the store goods were to be procured and paid for by Dunham, having been purchased on separate account. There may be a partnership for selling and not for buying; or for buying and not for selling; or for both buying and selling, which is the most usual: as if several put separate quantities of wheat into a common stock to be ground into flour and sold on joint account; or agree to buy jointly and divide the article when bought; or agree to buy and sell on joint account. In the first case each would be liable for his own purchases only; but in the second and third cases, each would be liable for the whole. Now if there were any partnership in this instance it would be of the first class; and in any view of the case the defendant would not be liable." *Dunham v. Rogers* 1 Penn. St. 255, 262. .

Not dissimilar to this is the case of *Denny v. Cabot* 6 Met. 82, which was also a case in which one party supplied the raw material and another manufactured it, and was to receive one-third part of the net profits. This proportion, it was found, was to be received by the manufacturer only as a compensation for his labor and services; and it was held perfectly competent to provide for making compensation by such a standard without constituting a partnership. *Perrine v. Hankinson* 11 N. J. 181, is relied upon as authority, among other cases. The same doctrine was reiterated in *Holmes v. Old Colony R. R. Co.* 5 Gray 58; *Bradley v.*

*White* 10 Met. 303 ; and by Day, J., in a careful opinion in *Harvey v. Childs* 28 Ohio St. 319, already referred to.

It is needless to cite other cases. They cannot all be reconciled, but enough are cited to show that in so far as the notion ever took hold of the judicial mind that the question of partnership or no partnership was to be settled by arbitrary tests it was erroneous and mischievous, and the proper corrective has been applied. Except when one allows the public or individual dealers to be deceived by the appearances of partnership when none exists, he is never to be charged as a partner unless by contract and with intent he has formed a relation in which the elements of partnership are to be found. And what are these? At the very least the following : Community of interest in some lawful commerce or business, for the conduct of which the parties are mutually principals of and agents for each other, with general powers within the scope of the business, which powers however by agreement between the parties themselves may be restricted at option, to the extent even of making one the sole agent of the others and of the business.

In this case we have the lawful commerce or business, namely, the keeping of the hotel. We have also in some sense a community of interest in the proceeds of the business, though these are so divided that all the profits and all the losses are to be received and borne by one only. But where in the mutual arrangement does it appear that either of the parties clothed the other with an agency to act on his behalf in this business? We speak now of intent merely, and not of any arbitrary implication of intent which the law, according to some authorities, may raise irrespective of and perhaps contrary to the intent. Could Beecher buy for the business a dollar's worth of provisions? Could he hire a porter or a waiter? Could he discharge one? Could he say the house shall be kept for fastidious guests exclusively and charges made in proportion to what they demand, or on the other hand that the tables shall be plain and cheap so as to attract a greater number? Could he persist in lighting with gas if Williams chose something different, or reject oil if Williams

saw fit to use it? Was a servant in the house at his beck or disposal, or could he turn off a guest that Williams saw fit to receive, or receive one that Williams rejected as unfit? In short, what one act might he do or authority exercise, which properly pertains to the business of keeping hotel, except merely the supervision of accounts, and this for the purpose of accounting only? And how could he be principal in a business over which he had absolutely no control? Nor must we forget that this is not a case in which powers which might otherwise be supposed to exist are taken away or excluded by express stipulation; but they are powers which it is plain from their contract the parties did not suppose would exist, and therefore have not deemed it necessary to exclude.

On the other hand what single act are we warranted in inferring the parties understood Williams was to do for, and as the agent of, Beecher? Not to furnish supplies surely, for these it was expressly agreed should be furnished by Williams and paid for daily. Not to contract debts for water and gas bills and other running expenses, for by the agreement there were to be no such debts. Nor was this an agreement merely that expenses incurred for both were to be met without the use of credit, but it was expressly provided that they were to be the expenses of one party only, and to be met by him from his own means. There was to be no employment of credit, but it was the credit of Williams alone that was in the minds of the parties.

It is difficult to understand how the element of agency could be more perfectly eliminated from their arrangements than it actually was. Beecher furnished the use of the hotel and a clerk to supervise the accounts, and received for so doing one-third the gross returns. It was not understood that he was to intermeddle in any way with the conduct of the business so long as Williams adhered to the terms of his contract. If the business was managed badly Beecher might be a loser, but how could he help himself? He had reserved no right to correct the mistakes of Williams, supply his deficiencies or overrule his judgments. He did indeed agree

to take and account for whatever furniture should be brought into the house by Williams, but the bringing any in was voluntary, and so far was Beecher from undertaking to pay to the sellers the purchase price, that on the contrary the value was to be offset against the deterioration of that which Beecher supplied ; and it was quite possible that, as between himself and Williams, there might be nothing to pay. And while Williams was not compellable to put any in, Beecher, on the other hand, had no authority to put any in at the cost of Williams.

It is plain, therefore, that if there is any agency in this case for Beecher to act for Williams, or Williams to act for Beecher, it is an agency implied by law, not only without having expressed a purpose that an agency shall exist, but in spite of their plain intent that none shall exist. If therefore we shall say that agency of each to act for the other, or agency of one to act for both in the common business, is to be the test of partnership, or to be one of the tests, but that the law may imply the agency irrespective of the intent, and then imply the partnership from the agency, we see at once that the test disappears from all our calculations. To imply something in order that that something may be the foundation whereupon to erect an implication of something else is a mere absurdity. The test of partnership must be found in the intent of the parties themselves. They may say they intend none when their contract plainly shows the contrary ; and in that case the intent shall control the contradictory assertion ; but here the intent is plain.

We have not overlooked any one of the circumstances which on the argument were pointed out as peculiar to this case. None of them is inconsistent with the intent that Beecher was to be paid for the use of his building and furniture merely. He retained possession ; but a reason for this appears in the power he reserved to terminate the arrangement whenever the contract was broken by Williams. Being in possession he might suppose he could eject Williams without suit. He might also think it important to the reputation of the hotel that no landlord should be in debt for supplies

or for servants' wages; and for that reason require cash payments. It is easy to see that as lessor he might have had an interest in all the stipulations to which Williams' assent was required.

There is another view of this case that seems to us conclusive. It is urged on behalf of defendants in error that Beecher was a dormant partner. Now a dormant partner is a secret partner; one who becomes such by a secret arrangement, while his associate is held out to the world as sole proprietor and manager of the business. Was this the case here? Nothing in the record indicates it. Beecher was in possession of the hotel, and we must suppose had his clerk there. These were facts open and patent to the whole world who had occasion to go there or to deal with Williams. They naturally suggested the inquiry what was the arrangement between the parties; and there is nothing in the case to indicate that plaintiff in error would not have learned all the details of the arrangement had they made the necessary inquiries. There is no indication anywhere of intended secrecy. If, therefore, there was any partnership at all, it existed because the contract and the open and public conduct of business under it created one, and the right of the defendants in error to recover must depend upon whether they had a right, with the contract before them, to understand that they were furnishing supplies on the credit of Beecher? Would they have had this right? If so, no interference of Beecher, and no notice to them not to sell to Williams relying on Beecher's credit, would have been of the least avail. If he had said to them, " Gentlemen, by our contract Mr. Williams furnishes all the supplies; I do not and cannot control in respect to quality, quantity or cost; he alone, by our understanding, is to pay for them, and I forbid you to sell on my credit;" it would all have been useless. On their view of the case he was bound by an iron rule of the law, from which it would have been impossible to rescue his credit until the arrangement with Williams should in some manner be terminated. And this would have been the case also even if the arrangement with Williams had been a secret one, and

Beecher had attempted to protect himself by disclosing its terms. This is as much as to say that parties are not at liberty to contract as they please, even when they propose nothing wrong and do nothing unfair to any one. But we cannot bring our minds to this result.

Our conclusion is that Beecher and Williams, having never intended to constitute a partnership, are not as between themselves partners. There was to be no common property, no agency of either to act for the other or for both, no participation in profits, no sharing of losses. If either had failed to perform his part of the agreement, the remedy of the other would have been a suit at law, and not a bill for an accounting in equity. If either had died, the obligations he had assumed would have continued against his representatives. We also think there can be no such thing as a partnership as to third persons when as between the parties themselves there is no partnership and the third persons have not been misled by concealment of facts or by deceptive appearances.

The judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.