H. H. WEBB ET AL. v. PETER JOHNSON, SARAH J. HEALY, AND OTTO E. KARSTE.

*Partnership—Evidence.*

1. A subpartnership does not *in fact* exist where one party furnishes all the capital, receives all the profits, and owns all the assets.

2. In such a case the ostensible partner may be held liable to third persons on the ground that he has held himself out as a partner, and they have treated him as such; but he has no interest which will entitle him to an accounting, or to any action at law or in equity against the other party.

3. Where a so-called "subpartner" owns the entire interest, including profits and property, he must be considered as the real partner, standing in the place of the ostensible one, and assuming his obligations and liabilities.

4. Where fraud is charged in the execution of a partnership agreement, in that it was attempted to conceal the name of the real partner, and screen him from liability, evidence of conversations had with either party in interest, either before or after the execution of the agreement, which throws light upon the actual nature of the transaction, is competent.

Error to Gogebic. (Haire, J.) Argued January 20, 1893. Decided April 21, 1893.

*Assumpsit.* Defendant Karste brings error. Affirmed. The facts are stated in the opinion.

*Button & Norris (William H. Seaman,* of counsel), for appellant.

*M. M. Riley (T. H. Bushnell,* of counsel), for plaintiffs.

GRANT, J. *Assumpsit* for goods sold and delivered. Verdict and judgment for plaintiffs.

January 17, 1890, the defendants Johnson and Healy executed written articles of copartnership. The firm was to be known as Peter Johnson & Co. The business was to be that of general merchandising in groceries, provisions, clothing, etc. Johnson had been previously engaged in the grocery business, and the agreement recited that he contributed to the firm the use of the store, for which he was to receive $50 per month, and the stock of goods and good-will of the business theretofore carried on by him, estimated and valued at the sum of $12,000, and that Mrs. Healy contributed the sum of $6,000 in cash. Frank A. Healy, the husband of Mrs. Healy, was to have charge of her interests, and the general management of the business, including the keeping of the books of account, paying and collecting all bills and moneys, and to have the entire charge of the financial part of the business. It was agreed that the banking business should be done at the Bank of Ironwood, a private bank in which defendant Karste was partner, and all moneys were to be there deposited.

Defendant Karste furnished Mrs. Healy the $6,000 which was put into the firm, and, at the same time with the execution of the copartnership agreement above mentioned, she and her husband made and executed to him an agreement, the material parts of which are as follows:

"*Whereas*, the said Sarah J. Healy has this day entered into copartnership with Peter Johnson, of said city of Ironwood, for the dealing in, at retail, of groceries, provisions, flour, feed, and grain, and clothing, boots and shoes, and gents' furnishing goods, said business to be carried on at said city of Ironwood under the firm name of Peter Johnson & Co.; and

"*Whereas*, the said Otto E. Karste has advanced to said S. J. Healy the amount contributed by her to said copartnership business, being the sum of $8,500:

"Now, therefore, it is agreed by said S. J. Healy that, in consideration of the said sum of money so advanced to her by said Karste, as aforesaid, said Otto E. Karste shall receive and be entitled to all profits arising and accruing

from said partnership business which, by the terms of said partnership, would belong to said S. J. Healy.

"It is further agreed that said S. J. Healy will and shall, at the termination of said partnership, return to said Otto E. Karste said sum so advanced by him as aforesaid, together with the increase thereof, and will also at the same time turn over to said Karste all the right, title, and interest she may have in and to, all and singular, the property and effects of said partnership."

The negotiations which culminated in the above agreements were introduced by one Engstrom, a clerk in the employ of Johnson. He, at the request of Johnson, went to Karste, and informed him that Johnson's business was increasing, and that he desired a partner, to which Karste replied that he would keep the matter in view. This is Karste's version of the conversation, and he denies having any other conversation with Engstrom. Engstrom, on the contrary, testified that he proposed to Karste a partnership with Johnson, and that, after considering it for eight or ten days, Karste said that he would form a partnership with Johnson, but that he would have to put another man in his place, and mentioned that Sarah J. Healy would represent his interests in the concern, and that Frank Healy would look after them.

At and for some time prior to the formation of the firm of Peter Johnson & Co., Karste was a partner with Mrs. Healy in the clothing business in Ironwood, which was carried on under the name of Sarah J. Healy. While the agreement between Johnson and Mrs. Healy is entirely silent as to this stock of clothing, yet the fact is that this stock, which stood in the name of Mrs. Healy, was united with the grocery stock of Johnson, and made a part of the partnership assets. That stock was inventoried at about $15,000, and Peter Johnson & Co. executed to Sarah J. Healy notes for that amount. These notes were discounted at Karste's bank by Mr. Healy, and the proceeds

(except $1,200, divided, according to Mr. Healy, between his wife and Mr. Karste) used to pay the debts of the firm of Sarah J. Healy and Mr. Karste.

The firm funds of Johnson & Co. were deposited in the bank as agreed, and appear to have been used in paying debts, but the firm was permitted to overdraw largely. Some time in October, 1890, Karste claims to have learned that Johnson had drawn money contrary to the partnership agreement. At this time Mr. Healy was absent, and Karste telegraphed him to return. Upon his return all the rights of Mr. Johnson in the concern were assigned to Mrs. Healy; she agreeing to pay all the debts, and save him harmless. At this same time Peter Johnson & Co. executed to the Bank of Ironwood a chattel mortgage on all their stock, covering the notes for the Healy stock, $15,000; overdrafts, $13,000; Mrs. Healy's notes for contribution, $8,500; and $3,000 which Karste claimed to have paid on creditors' claims.

Mrs. Healy was entirely irresponsible, financially, possessing no property except some household goods, and had no real interest in the business which was carried on in her name with Mr. Karste as partner, or in the business of Peter Johnson & Co. The partnership agreement, after execution, was delivered to Mr. Karste, and, together with the agreement between himself and Mr. and Mrs. Healy, was kept by him until he produced them upon the trial. While the copartnership agreement specified $6,000 as the amount contributed by Mrs. Healy to the partnership fund, Mr. Karste in fact furnished $8,500 for that purpose, $2,500 of which was furnished subsequent to the agreement. The amount furnished was not inserted at the time in the contract with Karste signed by Mrs. Healy and her husband, but when the additional $2,500 was furnished the total amount was written in.

Each party requested the court to direct a verdict in his favor. The plaintiffs contend:

1. That the agreement between defendant Karste and Mrs. Healy constituted him a partner in the firm.

2. That, even if this were not so, still, if the testimony of Engstrom is true, Mrs. Healy was a mere figurehead and Karste the real partner.

The defendant Karste contends that this agreement was made for the sole purpose of securing him for the amount advanced to Mrs. Healy as her share of the partnership funds, and that the testimony of Engstrom was incompetent, because the conversation with Karste, detailed by him, occurred prior to the execution of the partnership agreement, and could not, therefore, be used to contradict it.

The court refused both the requests, and instructed the jury that they must determine the question whether Karste was a partner, taking into consideration the agreements themselves, and the oral evidence which was admitted to throw light upon the transaction.

The evidence given by Engstrom was competent. If it was true, the conclusion almost necessarily follows that Mrs. Healy was the irresponsible figurehead, and that Karste was the real party in interest. The jury would have been justified in reaching this conclusion without the agreement executed at the same time between Mrs. Healy and Karste. The copartnership agreement, itself, was such as would naturally be executed where the object was to cover up the real nature of the transaction. This is not a case where prior conversations are merged in an agreement. Fraud was charged, in that it was attempted to conceal the name of the real partner, and screen him from liability. In such case, evidence of conversations had with either party in interest, either before or after the execution of the agreement, which throws light upon the actual nature of the transaction, is competent.

But we need not go beyond the written agreements of the parties, and the uncontradicted facts of the case, to determine the liability of Mr. Karste. The following facts are clearly established by the evidence, and from the contract itself:

1. Mrs. Healy had no actual interest in the business or property of the firm. She was entitled to no profits, either during or at the termination of the copartnership, nor was she entitled to any of the property at its termination and settlement of its affairs.

2. Mr. Karste was entitled to half of all the profits, as such, and to half the entire property of the firm upon its termination, and to the return of the entire capital he had invested, with all its increase.

It is said in *Beecher v. Bush*, 45 Mich. 202, in which case the principles applicable here are fully discussed:

"The test of partnership must be found in the intent of the parties themselves. They may say they intend none, when their contract plainly shows the contrary, and in that case the intent shall control the contradictory assertion."

The question in this case is not whether Karste held himself out as a partner, so as to estop him from the contrary assertion, for there is no evidence that he held himself out as such, but whether he was in fact a partner liable to trade obligations. The rule in such cases is thus stated:

"The participation in the profits of a trade, which makes a person a partner as to third persons, is a participation in the profits *as such*, under circumstances which give him a proprietary interest in the profits before division as principal trader, and the right to an account as partner, and a lien on the partnership assets in preference to individual creditors of the partner." *Burnett v. Snyder*, 81 N. Y. 555.

The principles here involved are so thoroughly and ably discussed, and the rule so clearly stated, in *Beecher v. Bush*, *supra*, that it is unnecessary to do more than to refer to that case, and to apply the rule to the present one.

A subpartnership does not in fact exist where one party

furnishes all the capital, receives all the profits, and owns all the assets. Such an arrangement lacks all the essential elements of a partnership. The ostensible partner, in such case, may be held liable to third parties on the ground that he has held himself out as a partner, and they have treated him as such; but he has no interest which will entitle him to an accounting, or to any action at law or in equity against the other party. But such, in fact, was the agreement between Mrs. Healy and Mr. Karste. He was not a subpartner, for that term implies that each should share in the profits. Where the so-called " subpartner " owns the entire interest, including profits and property, he must be considered as the real partner, standing in the place of the ostensible one, and assuming his obligations and liabilities. The law does not permit him to say, " I will take the profits and the property, if any is left after the payment of the debts, but I am not responsible for losses incurred." Mr. Karste had a proprietary interest in the profits, as well before as after the division. His contract with Mrs. Healy did not limit him to the profits after they were declared, and were in her hands. He could at any time compel an accounting. We think that Mr. Karste was a partner, and that the circuit judge should have directed a verdict in favor of the plaintiffs.

Inasmuch as the jury arrived at the correct result, it is unnecessary to refer to any alleged errors upon the admission of testimony.

Judgment affirmed.

The other Justices concurred.