### CITY NATIONAL BANK OF LANSING v. STONE.

PARTNERSHIP—CONTINUANCE OF BUSINESS BY SURVIVOR — LIABILITY OF ADMINISTRATOR.

Where, by agreement between a surviving partner and the deceased partner's administrator, the business is continued by the survivor with the property of the firm for the joint benefit of the parties, the administrator becomes a partner, and is liable as such for debts incurred in the conduct of the business.

Error to Ingham; Wiest, J. Submitted October 10, 1902. (Docket No. 40.) Decided November 11, 1902.

*Assumpsit* by the City National Bank of Lansing against Permelia L. Stone and Harry L. Stone, alleged to have constituted the firm of W. B. Stone & Son, on certain promissory notes and an overdraft. From a judgment for plaintiff on verdict directed by the court, defendant Permelia L. Stone brings error. Affirmed.

*Smith & Hood*, for appellant:

Cited, on the main proposition, *Wild* v. *Davenport*, 48 N. J. Law, 129 (7 Atl. 295); *Richter* v. *Poppenhusen*, 39 How. Prac. 82; *Avery* v. *Myers*, 60 Miss. 367; *Pitkin* v. *Pitkin*, 7 Conn. 307; *Stewart* v. *Robinson*, 115 N. Y. 328 (22 N. E. 160); *Bank* v. *Pennock*, 2 Mona. (Pa.) 166; *Dexter* v. *Dexter*, 60 N. Y. Supp. 371.

*Rollin H. Person*, for appellee.

Montgomery, J. This is an action on certain promissory notes made by the firm of W. B. Stone & Son, and to recover for an overdraft of the account of the same firm. The case is within a narrow compass, as the only meritorious question is whether the defendant Permelia L. Stone became a member of the firm. Certain questions relating to the rulings as to the admissibility of certain testimony become immaterial, inasmuch as the circuit judge, in directing a verdict for the plaintiff, rested his ruling upon the testimony given by the defendant Permelia L. Stone on this trial and on the trial of another case involving the same issue.

The firm of W. B. Stone & Son was originally composed of W. B. Stone and Harry L. Stone. W. B. Stone died on September 9, 1898, leaving Harry L. Stone, his only son, and Permelia L. Stone, his widow, who were the only persons, other than creditors, interested in his estate, and who were appointed to administer the estate. The business of the firm of W. B. Stone & Son was continued from September, 1898, until June, 1900. The question of the liability of Permelia L. Stone in this action is to be determined by ascertaining whether in what she did she made herself a member of the firm.

It is now well settled that the administrator, by tacitly leaving the assets in the hands of the surviving partner, does not incur liability as a partner. Nor does the receipt of profits of the business, in and of itself, constitute him a partner. Parsons, Partn. § 74, and cases cited. On the other hand, it appears to be as definitely settled that by an agreement to continue the business, either expressly or impliedly made, either for the benefit of the estate or of the executor, he does incur liability as a partner. Id. In the present case the testimony of Mrs. Stone, given on this trial, was as follows:

"*Q.* What did you and Harry talk about in regard to this business?

"*A.* I told him he better go on with it just as he had been doing.

"*Q.* What made you tell him that?

"*A.* Because we thought it was the best thing to do, because we did not know anything else to do. We did not talk about any other plan. We talked it just as a son and mother would talk about things, with no one else to look to. We were the only heirs, each claiming to own the property, and talked over the matter about going on with the business, and concluded it was the best thing to do.

"*Q.* And you told him to go on, did you?

"*A.* I don't know as I told him to go on. We thought it would be best to go on. He thought he could go on with the business, and work out of debt after a while.

"*Q.* The debts covered your property and his property, did they?

"*A.* Well, it would naturally, I suppose. I did not expect it would take my property, though, at the time.

"*Q.* But the debts you wanted to pay covered your property and his property? Is that true?

"*A.* Yes; there was a mortgage on it all. The understanding was that he was to pay the debts that were hanging over the firm,—pay the lumber debts; and we intended to sell the property as soon as we could, and pay the mortgage.

"*Q.* Did you talk that all over between yourselves?

"*A.* Well, we might have talked it over. It is hard to say just what we talked over. I presume we did. We talked over a good many things about all the business,— all the property.

" *Q.* Did you agree upon that,—come to an agreement between you; that is, both make up your minds to the same thing?

"*A.* We never made any agreement about it.

"*Q.* I mean, did you and he agree as to what was the best thing to do?

"*A.* Yes; I suppose we did.

"*Q.* And did he continue the business because of that agreement?

"*A.* I don't think he continued under anything I said about it, because he knew better than I did about it. I did not know anything about it. I never had anything to do with any of the business. He and I talked it over, and came to the conclusion that it was the best thing to do.

"*Q.* And he went on in accordance with that conclusion, didn't he?

"*A.* Yes. I asked him for money when I needed it, and he gave it to me. I could not say it came from the firm."

It is true, she also stated that she did not understand that she became a partner, but the test is whether her relations to the business were such as to constitute her a partner. As was said in *Beecher* v. *Bush*, 45 Mich. 188 (7 N. W. 785, 40 Am. Rep. 465):

"It is possible for parties to intend no partnership, and yet to form one. If they agree upon an arrangement which is a partnership in fact, it is of no importance that they call it something else, or that they even expressly declare that they are not to be partners."

In this case the testimony of defendant shows that Mrs. Stone, as well as her son, understood that, for an indefinite time, property owned by them jointly was to be used in the business, and that the assets of the old firm were to be continued in that business with a view to the mutual profit of the parties. Under the law, they became partners.

Judgment affirmed.

Moore and Grant, JJ., concurred. Hooker, C. J., did not sit.