## No. 9595.

### BOND-CONNELL SHEEP & WOOL COMPANY *v.* SNYDER.

1. PARTNERSHIP—Parties may form a partnership without intending it. Plaintiff and defendant entered into a contract for the purchase and sale of lambs; defendant to furnish the money necessary to be advanced upon the purchase, and plaintiff to conduct the purchases and sales. Each to share in the profits, and be liable for the losses, in specified proportions. *Held* a partnership.

2. CONTRACT—*Waiver of Contract Provision.* A contract for purchase and sale of live stock, one party to advance the money and the other to conduct the business, provides that the parties should "advise and counsel with each other and furnish all information regarding transactions agreed upon." Plaintiff, the one conducting the purchases and sales, made several purchases without consulting with his partner. As to some of these defendant accepted and settled therefor, without complaint. There was no suggestion of fraud in any of the transactions. *Held* that defendant was not permitted to waive the provisions of the contract in one instance and insist upon them in others.

3. INTEREST—*When Allowed.* In the settlement of a partnership in-
terest may be charged against one partner upon advances which
he has agreed to make and as to which he had failed.

*Error to Denver District Court, Hon. Julian H. Moore,
Judge.*

Messrs. LINDSEY & LARWILL and Mr. ROSS BRAY, for
plaintiff in error.

Messrs. MELVILLE & MELVILLE and Mr. E. M. WALTON,
for defendant in error.

Mr. Justice Bailey delivered the opinion of the court.

THE action was one by W. A. Snyder, for an accounting
under a contract with the Bond-Connell Sheep & Wool
Company, involving the purchase of sheep and lambs in
New Mexico, and resale thereof by Snyder at Denver.
Plaintiff had judgment in the sum of $39,497.11, which is
now here for review.

It is contended that the contract is one of agency, and
not a co-partnership. In any event all of the matters
between the parties have been settled except three items,
and that as to them the plaintiff ignored the contract in
that he acted without consulting or notifying defendant,
as by the terms of the contract he was bound to do, and
that the transactions, for this reason, resulted in a loss
instead of a profit; that as to such particular transactions
plaintiff was acting for himself, and not for the defendant.

It appears that for several years the parties had been
buying and selling sheep and lambs in New Mexico. The
contract for the year 1917, and the one here involved, pro-
vides that Snyder is "to participate in the profits derived
from all purchases, sales and disposals of such lambs, feeder
ewes and wethers, to the extent of one-fifth of the total
net profits, and to share in all losses occurring from the
sale of such lambs, feeder ewes and wethers, to the extent
of one-fifth of the total net losses."

The contract further provides as follows: "It is further
expressly agreed that the said W. A. Snyder, party of the

second part, shall participate on the above and foregoing basis, in all sales of lambs, feeder ewes and wethers, made by the party of the first part, except such lambs, ewes and wethers shipped to their own feed yard during the existence of this contract. It is further agreed and understood this agreement and arrangement has no reference to and does not apply on purchase of breeding ewes.

"It is hereby further agreed that the party of the second part includes in this agreement all purchases made by him in the State of New Mexico originating south of the town of Springer in Colfax County on the A. T. & S. F. Railroad, excepting the Chris Otto Lambs, etc., which the party of the second part reserves the privilege of handling exclusively himself."

"The parties of the first part agree to furnish all monies required as advance on purchases. The party of the second part to remit them full advances paid by purchasers on sales as sales are made."

"Both parties to this agreement agree to advise and counsel with each other and furnish all information regarding transactions agreed upon under the terms of this contract. It is hereby understood and agreed further that this contract shall remain in full force and effect during the year 1917."

Under this contract sheep and lambs aggregating in value approximately one million dollars were purchased and sold concerning which there is no dispute. In addition the plaintiff made deals known as the Van Houton, Corona and Ancho deals, which the defendant alleges were not handled according to the contract, but which it nevertheless accepted. The items in dispute are designated by the parties as the International, the Garcia and the Culp deals, all of which defendant repudiated as not within the terms of the contract. The reasons for such action are that Snyder had not advised or counseled with defendant in reference to these particular transactions, had not remitted the advances received by him in respect thereto, that the Culp and International deal was made on his own account, and

the Garcia either for his own account or for the account of some other person unknown to defendant. It was further alleged that plaintiff at no time treated the items in question as falling within the contract. This was denied, and the court found all facts disputed in favor of plaintiff.

The trial court in construing the contract, determined that it was not one of agency, as contended by defendant, but of partnership, and that as to its conditions it was entire and not severable. In discussing the effect of contracts like the one under consideration, in *Beecher v. Bush*, 45 Mich. 188, 7 N. W. 785, 40 Am. Rep. 465, Mr. Justice Cooley said: "It is nevertheless possible for parties to intend no partnership, and yet to form one. If they agree upon an arrangement which is a partnership in fact, it is of no importance that they call it something else, or even that they expressly declare that they are not to be partners. The law must declare what is the legal import of their agreement, and names go for nothing when the substance of the arrangement shows them to be inapplicable."

Partnership has been defined in 30 Cyc. 349, as follows: "The definition of a partnership which seems to be the most accurate and comprehensive is that of Chancellor Kent, as follows: 'A contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, and to divide the profits and bear the loss in certain proportions."

It plainly appears from the contract that the parties had an actual interest in all sheep handled under it, in the respective proportions of one-fifth and four-fifths, and that they were to share jointly in the ownership, possession, profits and losses. It is not disputed by plaintiff that the contract is one of co-partnership, but even if both denied the intent to assume such relation, the denial could not avail. In *Richardson v. Kelley*, 58 Colo. 47, 142 Pac. 171, at page 57, speaking of a like point, this court said: "It is sometimes said that, in order to constitute a partnership, the parties must have intended to assume that relation

towards each other.   But by this it is meant to say that they must have intended to make such stipulation as in law constitutes a partnership, and not that they intended the conclusion without regard to the conditions upon which it results as a matter of law.   It certainly cannot be meant to say that, when the parties have entered into an agreement which contains all the incidents of a partnership, the mere unexpressed mental apprehension of its effects will control the legal consequences."

Upon the whole record, considered in connection with the express provisions of the contract it is apparent that the relation between the parties was that of a partnership, not of agency.   It is an entire contract as by its terms it contemplates that each and all of its parts, material provisions and considerations, are interdependent and common each to the other.   13 C. J. 561.   The contract covers all of the business for the year 1917, and provides for the sharing of the profits and the losses in all transactions for that period.   Any other construction would permit the parties to choose which, if any, of the several transactions between them should be subject to the contract, and this might, in effect, completely nullify the agreement.   The trial court was eminently right in holding, as matter of law, that the purchases under the contract were not separable, and that the instrument did not give the right to the defendant to repudiate one purchase or series of purchases, and accept another or others.

It was also found, as a matter of fact, that several purchases were made without advising and consulting with the defendant.   It was also found that in some of the instances where this was done the defendant accepted and settled for the transactions without complaint.   As to these transactions the court held that the stipulation as to the consultation and advice was not vital, and that defendant should not be permitted to waive the provision in one instance and insist upon its enforcement in others. The court also definitely found that there was no element of fraud in the transactions complained of, and we are of

opinion that, under the circumstances of the case, the holding as to the materiality of the provisions for advice and consultation was not error.

It is vigorously contended by defendant that the court erred in refusing to make certain findings as tendered by it, and this refusal is assigned as prejudicial error. Inasmuch as the trial was to the court, and all the issues were found in favor of plaintiff, this point is not well taken, as there was abundant competent evidence, which, if believed and accepted by the court, as evidently was done, to support its findings, and this court upon a full canvass of the testimony is clearly of opinion that the findings of the trial court could not have well been otherwise.

The method adopted by the trial court in computing interest upon the sum involved is also assigned as error. Under the terms of the contract the defendant agreed to advance the purchase price of all stock bought. This was later changed by defendant, and defendant paid the grower, mailed purchasers checks to plaintiff, and then drew on plaintiff for the total sale price. Whenever a transaction showed a loss the plaintiff was drawn upon by defendant for the purchase price, and the loss was carried by plaintiff. In view of the fact that the findings upon all of the issues were for plaintiff, the method of computing interest appears to be eminently fair and equitable, as it is computed only upon advances made by Snyder to the general business, which advances under the contract it was incumbent upon the defendant to make.

After a careful examination of the entire record, and a consideration of all of the assignments of error in relation thereto, nothing appears which either calls for or would warrant a reversal of the judgment.

Judgment affirmed.