RUNO v. ROTHSCHILD.

1. PARTNERSHIP—ACTION AT LAW — CAPIAS AD RESPONDENDUM—ACCOUNTING.

In an action commenced by *capias ad respondendum*, where plaintiff's affidavit for the writ shows that his claim arose out of partnership relations with defendant, the trial court properly dismissed the case, since plaintiff's remedy is by way of an accounting and not an action at law.

2. SAME—ACTION AT LAW WILL NOT LIE AGAINST COPARTNERS.

An action at law by one partner against his copartners will not lie on a claim growing out of the partnership transactions until the business is wound up and the accounts finally settled.

3. SAME—DEFINITION.

Under the uniform partnership act (Act No. 72, Pub.

Acts 1917), a partnership is defined as an association of two or more persons to carry on as co-owners a business for profit.

Error to Wayne; Barton (Joseph), J., presiding. Submitted June 8, 1922. (Docket No. 52.) Decided July 20, 1922.

Action commenced by *capias ad respondendum* by Herman H. Runo against Douglas Rothschild. Judgment dismissing writ. Plaintiff brings error. Affirmed.

*Routier & Nichols*, for appellant.

*Keena, Lightner, Oxtoby & Hanley* (*Clifford M. Toohy*, of counsel), for appellee.

WIEST, J. This action was commenced by *capias ad respondendum*. Upon his arrest defendant moved to quash the writ and dismiss the suit; one ground of the motion being that plaintiff's affidavit for the writ stated his claim arose out of partnership relations with defendant and, therefore, his remedy is by way of an accounting and not an action at law and the arrest of his copartner. The motion was granted, the writ quashed and the suit dismissed and plaintiff has brought the case here by writ of error.

The parts of plaintiff's affidavit for the writ, bearing upon the relations of the parties, follows:

"That prior to the 3d day of March, A. D. 1918, he had his offices at 1544 David Whitney building, and practiced his profession there as a urologist, which said offices included a suite of offices and a laboratory used in the practice of his profession. * * *

"That just prior to the 3d of March, A. D. 1918, he approached the defendant herein, Dr. Douglas Rothschild, who was then his assistant, and offered to permit the said Dr. Douglas Rothschild to con-

tinue the occupation of the suite of offices aforesaid, together with the service of the laboratory and to practice his profession for the said plaintiff's patients; that the income received from the practice of the profession from Dr. Runo's patients and from the laboratory aforesaid, would be used in the following manner:

"*First*, to pay all the bills necessary to the maintenance of the offices, the practice and the laboratory, and that after the bills would be paid to divide the proceeds of the income share and share alike, to which agreement this deponent swears the said defendant, Dr. Douglas Rothschild, agreed to and actually commenced his services under this agreement; that the services of said Dr. Douglas Rothschild continued under this agreement from the 3d day of March, A. D. 1918, until the 31st day of October, A. D. 1921, during which time the plaintiff herein, Dr. Herman Runo, was in the service of the United States army and traveling in the Orient.

"That the said Dr. Douglas Rothschild continued to receive the income, to make the disbursements and shared in the income according to the agreement with Dr. Herman Runo until the 1st day of January, A. D. 1921, at which time he commenced to neglect the sharing of the proceeds of the income.

"That certain bills for the maintenance and upkeep of the offices and laboratory accrued which the defendant herein, Dr. Douglas Rothschild, neglected to pay and wholly refused to pay and which this plaintiff has been compelled to pay.

"That commencing with the 1st day of January, A. D. 1921, and continuing up to and including the 31st of October, A. D. 1921, the defendant herein received the entire income from the offices aforesaid, amounting to seven thousand ninety-three and 05/100 ($7,093.05) dollars, and he neither paid the bills falling due during that time nor made a division of the proceeds from the income, in accordance with the agreement aforesaid, and wholly appropriated and took into his possession and expended the assets and property of this plaintiff during that time, which said amount is two thousand ninety-five and 28/100 ($2,095.28) dollars.

"That this deponent has further been compelled to expend from his own pocket large sums of money in paying the bills left unpaid by this defendant and which the defendant, Dr. Douglas Rothschild, should have paid; that after the 1st day of January, A. D. 1921, the said Dr. Douglas Rothschild, well knowing that he had no interest in and to the share of the proceeds belonging to this plaintiff, and with intent to defraud this plaintiff, took and converted this plaintiff's proceeds to his own use and used and appropriated the same and expended the same to parties unknown to this deponent."

Does this state a mere hiring of defendant or a partnership between the parties? Counsel for plaintiff insist the relation was a fiduciary one and for a fraudulent breach of the trust plaintiff was entitled to sue out the *capias.* Plaintiff's affidavit shows an agreement under which defendant was to take charge of his offices and equipment and carry on the business for their joint benefit, pay all expenses out of the income and divide the profits with him. This severed their previous relations under which defendant was but an employee and constituted the parties copartners. Defendant had a right to manage and control the business and his share of the profits was not in the nature of compensation for services rendered to plaintiff. Plaintiff did not hire defendant to carry on his practice but entered into relations with him wholly inconsistent with those of master and servant or employer and employee. Defendant was empowered to act for both in the management of the business and both were liable for the expenses if the income was not sufficient to pay the same. This was not a mere joint adventure but a community of interests with all the essential incidents of partnership rights and liabilities. The agreement delegated to defendant the power and authority to manage and control the same for their common benefit and profit. Plaintiff contributed toward the earning of profits, in

the practice to be conducted by defendant, his offices, laboratory and equipment and his clientele, and defendant contributed his time, labor and skill and such new business as he could command, and these contributions were dedicated to the enterprise for the profits to be derived therefrom.

While the law has always considered the partnership relation one of contract and intention, it makes. determination of the status of the parties from their agreement, and draws their intention from their acts. Act No. 72, Pub. Acts 1917, known as the "uniform partnership act," defines a partnership as an association of two or more persons to carry on as co-owners a business for profit. The act also declares (§ 6, subd. 4):

"The receipt by a person of a share of the profits of a business is *prima facie* evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:
"(a) As a debt by installments or otherwise,
"(b) As wages of an employee or rent to a landlord." * * *

It is clear, judging from the affidavit, that the business was carried on under the agreement for the mutual pecuniary benefit of the parties, and not merely for the benefit of plaintiff with pay to defendant for services rendered.

In *McAlpine* v. *Millen*, 104 Minn. 289 (116 N. W. 583), it was held:

"If the evidence shows that the parties intended to combine their property, labor, and skill in an enterprise as principals for the purpose of enjoying the profits, it establishes a partnership. The question always is, was there a joint business, or were the parties carrying on the business as principals and agents? If there is a joint business, it naturally follows that the parties were to share the profits in some proportion, and hence an agreement to share profit is strong evidence that the enterprise was to

be conducted as a joint undertaking. * * * The management of the business and the extent to which the business shall be conducted and be under the control of any particular partner is also left to be arranged by the members of the partnership. The sole management may by agreement be vested in one partner."

In *Bartelt* v. *Smith*, 145 Wis. 31 (129 N. W. 782, Ann. Cas. 1912A, 1195), it was said:

"It is true, as claimed by counsel for appellant, that there can be no partnership as between the parties themselves unless a contract of partnership be shown, and that it must include an agreement to share profits as profits, *i. e.* as common owners thereof. *Sullivan* v. *Sullivan*, 122 Wis. 326 (99 N. W. 1022). But it is not necessary that the partners should call themselves such. If they engage in a joint business enterprise, each putting in capital or labor or both, with an agreement to share profits *as such*, there will be a partnership whatever they may call themselves."

See, also, *Beecher* v. *Bush*, 45 Mich. 188 (40 Am. Rep. 465) ; *City National Bank of Lansing* v. *Stone*, 131 Mich. 588.

We are of opinion that the plaintiff, in his affidavit for the writ, stated an agreement between himself and the defendant constituting them copartners with reference to the subject-matter of this action. The circuit judge was right in his holding that plaintiff was not entitled to maintain the action.

"As a rule an action at law by one partner against his copartners will not lie on a claim growing out of the partnership transactions, until the business is wound up and the accounts finally settled." 30 Cyc. p. 461.

See *Reed* v. *Gould*, 105 Mich. 368 (55 Am. St. Rep. 453).

The judgment is affirmed, with costs to defendant.

FELLOWS, C. J., and McDONALD, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.