DANIEL N. RUNNELS v. JAMES MOFFAT.

*Practice in circuit courts—Reference—Bill of exceptions—Findings of referee—Partnership.*

1. On a reference under the statute, the case on its return is to be treated in all respects as though the trial was had before and the facts found by the court, and the bill of exceptions settled and signed by the referee performs the same office as one settled and signed by the circuit judge, on a trial before him. *Altman v. Wheeler*, 18 Mich. 243.

2. Where on the hearing of exceptions to a referee's report it appeared that no opportunity had been given to the parties to settle bill of exceptions, and that, while the facts had been found, the conclusions of law had not been stated separately, the court properly ordered a re-reference to correct these omissions.

3. It is always competent for the court, in furtherance of justice, to refer the report back to the referee, to make such corrections, and supply such inadvertent omissions, as may be made from the report itself, even where no exceptions are taken. *Bryant v. Hendee*, 40 Mich. 543.

4. Upon the coming in of the referee's report after a bill of exceptions has been settled, and the findings of fact and law by the referee, either party may file exceptions to the report, and the case may be brought on for hearing in the circuit court, which is to determine the questions raised under the objections and upon the bill of exceptions.

5. A referee's report will not be set aside, and a new trial ordered, ·on the ground that the finding of facts is contrary to the weight of evidence, the report as to facts found being conclusive.

6. Proceedings before the referee are to be considered substantially as before the court; and on a re-reference for the purpose of settling a bill of exceptions, and announcing his conclusions of fact and law already found, he would have the same right to refuse to receive further testimony as the circuit judge if the proceedings were being conducted before him. The referee has some discretion in such proceedings, and such discretionary matters are only reviewable when such acts amount to abuse of discretion.

7. The fact that the owners of ferry-boats run them as joint property, pay the expenses out of the earnings, and divide the profits according to such ownership, but have no partnership name, and do not understand, as between themselves, that they are partners, will not make them such, whatever their relations may be as to third parties.

Error to St. Clair. (Stevens, J.) Argued October 19, 1888. Decided January 11, 1889.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*W. E. Leonard (Frank Whipple,* of counsel), for appellant.

*Frank T. Wolcott,* for plaintiff.

[The positions of counsel are fully stated in the opinion.—REPORTER.]

LONG, J. This is an action of *assumpsit* commenced in the circuit court for St. Clair county on September 14, 1885. The following is a copy of a promissory note set out in the declaration:

"$550.          PORT HURON, MICH., March 16, 1879.
"Six months after date I promise to pay to the order of D. N. Runnels five hundred and fifty dollars, at my office, Port Huron, Mich. Value received, with interest at ten per cent.          JAMES MOFFAT."

On January 26, 1886, defendant pleaded the general issue, and gave notice of set-off. March 31, 1886, the attorneys of the respective parties appeared in open court, and by their consent an order was then made by the court appointing B. C. Farrand referee in pursuance of the statute; it appearing that the controversy would involve the examination of a long account. The parties appeared by their respective attorneys before the referee, examined witnesses, and introduced such other evidence as to them seemed necessary to establish their respective claims. At the conclusion of the testimony, and after the arguments of counsel, the referee made findings of fact and law, and filed the same with the clerk of the circuit court on November 18, 1886. On December 4, 1886, the defendant's counsel filed exceptions to the report of the referee. Defendant asked that the proceedings be quashed, and a new trial or reference be had in a court of equity. No hearing was had on this motion. On February 4, 1887, defendant's counsel again moved the court to strike the report of the referee from the files, because the referee did not proceed in the manner provided by the statute, failed to settle a bill of exceptions, and gave the defendant no time to prepare a bill of exceptions; and also because the referee did not find his conclusions of fact and law separately, as required by the statute. This motion came on before the court for argument, and on February 21 the court made an order referring said cause back to the referee—

"To settle a bill of exceptions, or to take such other steps as may be necessary in the premises."

This order was served on the referee on February 25, 1887, who caused a notice to be served on the attorneys of the respective parties, fixing March 12, 1887, at 10 o'clock, A. M., at his office in Port Huron, as the time and place of settlement of the bill of exceptions, and at

which time the referee would announce his findings of fact and law. On that day the parties appeared in person, and by their respective attorneys, and by consent the cause was continued to March 22, 1887, at which time the referee announced his conclusions of fact and law, which are as follows:

### CONCLUSIONS OF FACT.

"1. That on or about the year 1876 the ferry Dormer was owned by the plaintiff and defendant, each owning an undivided half. The ferry Sarnia was then owned by the defendant, Moffat, Edwin Botsford, and George E. Brockway, each owning an undivided third part.

"2. In 1877 the plaintiff, Runnels, purchased Botsford's interest in the Sarnia, and the Grace Dormer and Sarnia ran as ferries between Port Sarnia, in Ontario, and Port Huron, landing in Black river. Said Moffat and Runnels then owned each an undivided half in the Dormer, and each one undivided third of the Sarnia.

"3. About July, 1877, Moffat and Runnels each sold their interest in the Sarnia to George and Richard Tebo, and the Sarnia burned in 1878 or 1879.

"4. In 1878 the ferry Beckwith was owned, one undivided half by one Kilderhouse, and the other undivided half by one Howard; and said Moffat and Runnels purchased from Kilderhouse and Howard their interest in said boat Beckwith, so that thereafter the Beckwith was owned by Moffat and Runnels, each owning an undivided one-half. In this purchase said Moffat and Runnels purchased jointly, giving joint notes to Howard and Kilderhouse, which notes were afterwards paid by them jointly.

"5. In March, 1879, one of these joint notes, for $1,100, to said Kilderhouse, became past due, and at Moffat's request Runnels sent to Kilderhouse $1,100 in payment of that note, and Moffat gave Runnels his note for $550, in payment of his share thereof, a copy of which note is set out in the declaration in this cause, and bears date March 16, 1879, and was made payable six months after date, with interest at 10 per cent.; and no payments have ever been made on that note, which is still owned by said Runnels. The principal of said note, with interest thereon, amounts at the date hereof to $990.73, and that amount is due from Moffat to Runnels therein.

"6. On December 15, 1880, the parties James Moffat

and Daniel N. Runnels had a full and final settlement of their claims and accounts, and all matters of deal and indebtedness, including their business relations and deal connected with said ferry-boats, were settled and adjusted, except said note for $550, which was not included in such settlement, and the amount found due on such accounting was thereby found to be $1,021.90, of which amount the said Moffat paid Runnels, on or about that time, $500, leaving a balance due Runnels of $521.90 on such settlement and account stated, which sum, with interest, amounts at the date hereof to $750.92, and no other payments have ever been made thereon.

"7. The first item of said last five items in plaintiff's bill of particulars was a charge of $125 for a steam-boat wheel, which I find was sold by plaintiff to defendant only upon condition that it would answer the purpose for which it was bought. I further find that upon trial said wheel would not answer the purpose for which it was bought, and the same remained the property of the said Runnels, and the said Moffat never became indebted therefor.

"8. The next item in plaintiff's bill of particulars was a charge of $50, being one-half the amount paid by Runnels to one Carleton for the lease of his dock. I find that Moffat was in no way a party to such leasing, and never acquiesced in the same, and never became indebted therefor.

"9. The next of said five items in plaintiff's bill of particulars is a charge of $34.50 for building a ferry dock, dredging, etc. I find that the dredging and building said dock was in no way done for Moffat, and he never acquiesced in the same as having been done for him and said Runnels, and said Moffat never became indebted therefor.

"10. The next item of said five in plaintiff's bill of particulars was a charge of $15 for one-half of the rent paid by Runnels to the city of Port Huron for the use of its dock. I find that said dock was not leased by said Moffat, or with his consent, as for him and said Runnels, nor did he ever acquiesce in the same, or become indebted to Runnels therefor.

"11. The last charge in plaintiff's bill of particulars is a charge of $150 for a balance due on settlement of a matter connected with the ferry Sarnia. I find that whatever may have been due on account of this item was

due and payable December 15, 1880, and was included in, settled, and adjusted by the settlement between the parties, December 15, 1880.

"12. All checks, vouchers, and receipts offered in evidence by the defendant, showing payments by Moffat to Runnels since December 15, 1880, except $500 paid about December 15, 1880, on the amount found due on the settlement of that date, as before stated, do not show payments on the $550 note, or the balance found due on settlement of December 15, 1880, or any matter involved in this suit, but are evidence of payments made from time to time on monthly and periodical settlements of ferry accounts and earnings accruing after the spring of 1879, and related to matters of deal between Moffat, Runnels, and McMorran.

"13. Between 1876 and December 15, 1880, Moffat and Runnels owned undivided interests in the Dormer, Beckwith, and Sarnia, varying from time to time. Said boats were used as ferries between Sarnia and Port Huron. The cost and expense of operating them was paid out of the earnings of said boats, and the balance divided between the owners according to their ownership in the boats. They had no partnership agreement, no partnership name, and did not understand, as between themselves, that they were partners during any and all the time covered by the transactions involved in this suit.

"14. I find that whatever service was rendered, by way of towing Runnel's spile-driver, was rendered with a mutual understanding between the parties hereto that no charge was to be made therefor, and was rendered in consideration of individual benefits accruing in other ways to Moffat. I further find that all these matters were included in, adjusted, and settled by the settlement of December 15, 1880.

"15. I find that all claims made by defendant by way of set-off, for towing Runnel's spile-driver, since December 15, 1880, by the ferry-boats, has been included in, and adjusted and settled in, monthly and periodical settlements of the ferry-boats' earnings and business since that time.

"16. In reference to defendant's claim by way of set-off for one-half of interest in rent of house purchased of Tebo, I find that this house was owned by the wife of Moffat and the wife of Runnels, and that neither of the

parties hereto showed any right or authority to claim the rent thereof. I further find that, by mutual consent, all matters in relation to this house, and the rent thereof, were taken into the account, included in, adjusted, and settled by the settlement of December 15, 1880, between the parties hereto.

"17. I find that James Moffat is indebted to Daniel N. Runnels in the sum of $521.90, and interest at seven per cent. since December 15, 1880, which at this date amounts to $750.92; and also in the sum of $550, with interest thereon from March 15, 1879, at ten per cent., which at this date amounts to $990.73,—making the total amount due at this date from the defendant to the plaintiff, over and above all payments and set-offs, the sum of $1,741.65."

#### CONCLUSIONS OF LAW.

"1. Moffat and Runnels were not partners.

"2. If the first finding of law is erroneous, and there was a partnership, then the partnership matters, having been mutually adjusted, and a balance found due, a suit therefor may be maintained in a court of law to recover the amount.

"3. Runnels is entitled to a judgment against Moffat for the sum of $1,741.65, with interest from the date hereof."

The referee filed his report with the clerk of the circuit court on March 24, 1887, together with his findings of fact and law. On September 26, 1887, defendant's counsel filed objections to the report of the referee. He objects to the filing of a new and different finding, the same not being called for or authorized by the statute or order of the court. Objection is also made to the change in paragraph 5 of the report. This change made by the referee in the fifth paragraph was the addition of $19.07 interest to the amount found due on the note, and the sum of $12.95 of interest added to the amount found due the plaintiff on the account stated, increasing the amounts found due the plaintiff by these amounts over the first finding made by the referee. The other objections made

to the report of the referee relate principally to the question that the evidence does not support the findings, and the question of partnership, and also that the findings of law are not warranted by the facts found.

These objections were overruled by the court, and on December 15, 1887, judgment was entered in the court below in accordance with the findings in favor of the plaintiff, for the sum of $1,741.65, with interest from March 22, 1887, the date of the report. Defendant brings the case to this Court by writ of error.

The following errors are assigned:

1. That the court erred in not dismissing the proceedings on the motion filed February 4, 1887, by defendant's attorneys, and ordering the trial by the court.

2. That the court erred in referring the case back to the referee to settle a bill of exceptions, and not referring the whole case back.

3. That the court erred in ordering the case stricken from the docket for the September term, after said cause had been noticed for trial by the plaintiff's counsel, and served on defendant's attorney.

4. That the court erred in not dismissing the case on the motion made by defendant's attorney, September 26, 1887.

5. That the referee was in error in changing the testimony; also in making two distinct findings without evidence; also in not allowing the defendant's bill of set-off, and in refusing to allow defendant to swear a witness after the case had been referred back; also in not finding the matter was a partnership.

6. The referee was in error in making a new finding, changing the figures with no new evidence to support it.

7. The referee erred in not receiving the evidence offered by the defendant when the case was referred back.

Section 7377, How. Stat., provides:

"Issues joined in any civil action at law, whether of fact or of law, may, upon the written consent of the parties, filed with the clerk, or upon their oral consent in open court, be referred to such person, or such three persons, as may be agreed upon by the parties, or appointed by the court in case the parties fail to agree."

Section 7379 provides:

" The trial by such referees shall be conducted in the same manner as a trial by the court," etc.

Section 7380 provides:

" The referees shall report to the court in writing, showing therein the facts found and the conclusions of law separately; and such report may be filed in term-time or in vacation, and shall stand as the finding of the court in term-time, unless excepted to, and judgment may be entered thereon in the same manner as if the action had been tried by the court."

Section 7382 provides:

" Either party, on the hearing before the referees, shall be entitled to take exceptions to any ruling of the referees, in the same manner as on trial in open court; and, in case exceptions are so taken, the parties, respectively, shall be notified by the referees of the time and place when and where they will meet to complete their report, at which time they shall be informed of the conclusions of the referees; and the parties so excepting may then, or previous to such time as the referees shall then adjourn to, prepare a bill of exceptions, which shall be settled by the referees on such adjourned day, and shall then be annexed to and filed with their report; and a review thereof may be had in the same manner as of exceptions to the report."

Section 7383 provides:

" On the hearing of such bills of exceptions, or upon exceptions to the report, or both, the circuit court may confirm or set aside such report, in whole or in part, and in its discretion refer the case back to the referees, or enter judgment thereon; and, in case that judgment shall be entered thereon, error may be brought on such judgment as in other cases, in which case the bill of exceptions, if any, the report, and the exceptions to the report, shall be considered as forming a part of the record in the case, and the finding of facts by the referees shall be treated as a special verdict."

The case, as it comes to this Court under the provisions of the statute, is to be treated in all respects as

though the trial was had before the court, and the facts found by it, and the bill of exceptions settled and signed by the referee performs the same office as one settled and signed by the circuit judge when the case is tried in court. *Altman v. Wheeler*, 18 Mich. 243.

It appears that after the referee had heard the proofs offered by both parties, and they had announced the proofs closed on both sides, he made findings of fact and law, and exhibited them to counsel for each party before filing with the clerk of the court. The referee failed to give notice of the time and place when he would announce his conclusions of fact and law, and gave no opportunity to settle a bill of exceptions, and his conclusions of fact and law were not at that time found separately, as required by the statute.

The defendant entered a motion on December 14, 1886, as above stated, which was not brought on for hearing, and on February 4, 1887, the second motion was made and overruled by the court, and the case was again referred to the referee. This the court had power to do under the provisions of section 7383, How. Stat. The referee at once gave notice of the time and place of settlement of a bill of exceptions, and of the announcement of his conclusions of facts and law, treating the whole subject as though no such announcement had been made, and as though no report had ever been filed in court.

This power of the court to refer the case back to the referee is given by the statute where exceptions have been taken, and is to be exercised upon the hearing of such exceptions. It appeared to the court that no opportunity had been given to the parties to settle bill of exceptions, and that, while the facts have been found, the conclusions of law had not been stated separately. To correct this, the court had an undoubted

right, when exceptions were filed, to refer the case back. The reference back was not for the purpose of reconsideration by the referee of the facts, or to change his conclusions of law, but that the conclusions of law and facts might be separately stated, and the parties have an opportunity to settle a bill of exceptions, such as the statute is designed to give; and it appears that no change was made in the facts found, or in the conclusions of law by the referee, except the adding of interest to the amount of the note and account stated. This was a correction of a clerical mistake in computation, and one which the referee had the undoubted right to make. It was in no sense a change of any conclusion of fact or law. It could be corrected from the report itself. This proceeding in no manner tended to prejudice the rights of the defendant; and the referee very properly made the correction, settled the bill of exceptions, and made his findings of law and facts separately. This was authorized by the statute. *Smith v. Warner*, 14 Mich. 156; *Bewick v. Fletcher*, 39 Id. 29; *Mason v. School-dist.*, 34 Id. 232.

It is always competent for the court, in furtherance of justice, to refer the report back to the referee, to make such corrections, and to supply such inadvertent omissions, as may be made from the report itself, even where no exceptions are taken. *Bryant v. Hendee*, 40 Mich. 543.

Error is also assigned upon the ruling of the court in ordering the case stricken from the calender for the September term of the court. This objection is too frivolous to need consideration or comment. It appears that, while the motion made by defendant's counsel was pending to strike the report of the referee from the files, and before such motion was brought on for hearing, the counsel for plaintiff, by a clerk in his office, through inadvertence, noticed the case for trial, and served notice of trial.

upon the counsel for defendant.    Upon discovering that such notice of trial had been served, and the cause placed upon the calendar for trial, plaintiff's counsel made a showing to the court by affidavits that the case was improperly upon the calendar, setting forth in such affidavits that it occurred by the error of his clerk, and asked that the case be stricken from the calendar, and the court so ordered.    This could in no sense be considered as a waiver by the plaintiff of his right to a judgment upon the report of the referee, or an abandonment of his proceedings under the reference, and the court very properly ordered the cause stricken from the calendar. It was not in a position to be heard as a case for trial before the court or by jury.    The report of the referee was undisposed of, and the case stood for hearing upon the exceptions to the report made by the defendant.

It is claimed that the court erred in not setting aside the report of the referee on motion of defendant's counsel of September 26, 1887, as finally made.    Upon the coming in of the report of the referee after a bill of exceptions has been settled, and the findings of the facts and law by the referee, either party may file exceptions to the report, and the case may be brought on for hearing in the circuit court.    The court is then to determine the questions raised under the objections to the report, and upon the bill of exceptions.    The report will not be set aside, and a new trial ordered, on the ground that the findings of fact are contrary to the weight of evidence. *People v. Judge,* 18 Mich. 483.    The referee's report of facts found is conclusive.    *Abbott v. Mathews,* 26 Mich. 177; *St. Denis v. Saunders,* 36 Id. 369.

It appears from the certificate of the referee attached to his report as filed that there were several days spent in taking testimony, and that neither party requested the referee to take down the testimony given; that the testi-

mony returned by him is a memorandum of the testimony kept for his own convenience; that defendant's counsel presented the same, and asked to have it settled and signed as a bill of exceptions in this case.   The referee then certifies:

"It is not all the testimony taken, nor can I say it is the substance of all the testimony presented by either party,"—

And that the bill of exceptions is signed and settled by request of defendant's attorney.   It appears from the testimony returned that both parties were given full latitude, and were permitted to go into all the deal between the parties during the several years from 1876 up to the time of the commencement of suit.   Testimony was received showing the set-offs claimed by the defendant and considered by the referee.   Whether such set-offs should have been allowed depended upon the facts proven, and was a question for the referee.   The evidence returned has a tendency to support the facts found by the referee. The weight and credit to be given this testimony was exclusively a question for the referee, and not for the court, and the court very properly, as we think, refused to set aside the report.

Under the fifth assignment of error it is complained that the referee was in error in changing the testimony. The referee in his certificate says that he simply kept a memorandum of testimony; that in settling the bill of exceptions he went through this memorandum, and made some corrections to harmonize the same with the testimony as given.   This is the only showing that any change was made.   It was simply such a change of the memorandum as to make it correspond to the testimony as given by the witness, and so certified by the referee. There was no error in this.

Counsel for defendant also contend that there were two

distinct findings made without any evidence. From what we have already said, that question is disposed of. It was a reference back for such corrections as the court, under the statute, had a right to order.

Counsel for defendant also contend that the referee was in error in refusing to swear witnesses in his behalf after the cause was referred back. The testimony was closed and the first report filed on November 18, 1886. In February following the case was referred back to the referee for the purpose as before stated. On March 21, 1887, when the parties met with the referee for the purpose of settling the bill of exceptions, defendant's counsel offered additional testimony to maintain the issue on his part, and the cause was adjourned to March 22. On this day defendant's counsel again offered additional testimony This was objected to by plaintiff's counsel, for the reasons:

1. Because the proofs were closed before the former report was made to the court.

2. Because the findings of the referee, both of facts and law, had been prepared, and were ready for announcement at the time when the offer was made, on March 21.

3. Because no notice had been given to the plaintiff's counsel of such intended offer, nor was the nature or materiality of the evidence shown or explained.

The referee sustained these objections, and refused to hear further proofs. This offer of further testimony was under the circumstances properly refused. No showing was made of its materiality. The referee had already made his findings of fact and law, and had met with the parties, not for the purpose of opening the case for further proofs, but to settle a bill of exceptions, and announce his conclusions of fact and law. Proceedings before the referee are to be considered substantially as before the court. *Gibson v. Burrows*, 41 Mich. 716 (3 N. W. Rep. 200); *Altman v. Wheeler*, 18 Id. 240. The referee would have the same right to refuse further testimony that the circuit judge would have had if the

proceedings were being conducted before him. The referee has some discretion in such proceedings, and such discretionary matters are only reviewable when such acts amount to an abuse of discretion.

Only one further question need be discussed. It is contended that the referee was in error in not finding the matter was a partnership. Whether the referee was in error in that conclusion or not cannot now be considered. It is not pretended that all the evidence taken before the referee is returned with the bill of exceptions, and we must take the findings of fact by the referee as conclusive. Admitting the facts as found, then, as a matter of law, the referee is correct in his conclusions. The referee found that Moffat and Runnels owned some ferry-boats together. They ran them as such, paid the expenses out of the earnings, and divided the profits according to the ownership. They had no partnership name, and did not understand, as between themselves, that they were partners. This certainly did not make a partnership as between themselves, whatever their relations were to the public. This question, however, became wholly immaterial, under the further finding of the referee that the whole matter had been settled and adjusted between the parties, and a balance found due the plaintiff on such settlement. This became, then, an account stated, and for which an action could be maintained in a court of law, though their dealings had been those of partners.

We have carefully examined the record, which is very voluminous, and find no error prejudicial to the defendant.

The judgment of the court below must be affirmed, with costs.

CHAMPLIN, CAMPBELL, and MORSE, JJ., concurred. SHERWOOD, C. J., did not sit.