## GRIGSBY v. DAY.

1. Defendant authorized plaintiff to solicit loans for him, the commissions being divided between them, and a second mortgage to defendant being taken to secure such commissions. Each application for a loan, when accepted by defendant, was returned with a separate letter of instructions, and the sum necessary to make the loan; and when it was made all papers were sent to defendant. The parties lived in different states, had no partnership name, and each carried on other business. *Held*, that, as between themselves, there was no partnership.

2. It was agreed that plaintiff should look up farm lands for defendant to purchase, and that on a sale of the lands by defendant the profits should be equally divided. Plaintiff had no authority to contract for either pur

chase or sale. The parties lived in different states, had no partnership name, and each carried on other business. *Held*, that, as between themselves, there was no partnership.

3. Where one owning a half interest in notes and mortgages taken in his name assigns his property, including such notes and mortgages, for the benefit of creditors, his co-owner may sue him for conversion thereof, and need not resort to the assignee or the property.

4. The face value of notes and mortgages is presumed to be their real value in an action for their conversion, under Comp. Laws, Sec. 4615, providing that for the purpose of estimating damages the value of an instrument in writing is presumed to be equal to that of the property to which it entitles its owner.

(Opinion filed April 16, 1897.)

Appeal from circuit court, Minnehaha county. Hon. J. W. JONES, Judge.

Action by Melvin Grigsby against Frederick T. Day. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

The facts are stated in the opinion.

*Palmer, Preston & Rogde*, for appellant.

The allegations of the complaint, and the undisputed evidence, disclose a co-partnership contract as between plaintiff and defendant, and that in their dealings they sustained the relation of partners towards each other. § 4027, Comp. Laws; Spaulding v. Stebbins, 56 N. W. 469; 1 Bates on Partnership, § 1 *et seq*; Campbell v. Sherman, 8 N. Y. Supp. 630; Weinstanley v. Gleyre, 34 N. E. 628; Dutcher v. Buck, 55 N. W. 676; May v. Cohn, 52 N. W. 288; Quinn v. Quinn, 22 Pac. 264; Mason v. Partridge, 66 N. Y, 633; Magovern v. Robertson, 116 N. Y. 61; Hunt v. Erickson, 57 Mich. 330; Newell v. Cochran, 43 N. W. 84; Stern v. Harris, 41 N. W. 1036; Yeoman v. Lasley, 40 Oh. St. 190; Hulett v. Fairbanks, Id. 233; Morse v. Richmond, 97 Ill. 303; Canada v. Burksdale, 76 Va. 891; Fowler v. Barnekoff, 25 Pac. 370; Upton v. Johnson, 54 N. W. 266; McElroy v. Swope, 47 Fed. 380; Fisher v. Sweet, 67 Cal. 228; King v. Rimington, 29 N. W. 352. The conversion, if any conversion, took place, is chargeable to the assignee, and not to defendant.

Burrill on Assignments, 591; Chase v. Chapin, 130 Mass. 128; Cobbey on Replevin, §§ 290-291; 17 Am. & Eng. Encyc. of Law 1152.

*Wm. A. Wilkes* and *Davis, Lyon & Gates*, for respondent.

There was no partnership.   17 Am. & Eng. Encyc. of Law 832; Phillips v. Phillips, 49 Ill. 437; Abbott's Trial Ev., 227; Salter v. Ham. 31 N. Y. 321; Chisholm v. Cowles, 42 Ala. 179; Seaburg & Johnson v. Gowell, 11 L. R. A. 136; May v. Cahn, 52 N. W. 288; Conklin v. Barton, 43 Barb. 435; Eastman v. Clark, 53 N. H. 276; Harvery v. Childs, 28 Ohio 319; Fitch v. Hall, 25 Barb. 13; Runnels v. Moffat, 41 N. W. 225; Thompson v. Bowman, 73 U. S. 736; Fargo v. Peterson, 39 N. W. 891; Pulford v. Morton, 28 N. W. 716; Beecher v. Bush, 7 N. W. 363.

If one tenant in common of personal property undertakes to sell the entire property, he is liable to an action of trover at the suit of his co-tenant; or he may sue and take the property from the purchaser.   Cooley on Torts, 2nd Ed., p. 533; 2 Hilliard on Torts, 279; 4 Am. & Eng. Encyc. of Law, 114; Dyckman v. Valiente, 42 N. Y. 549; Delaney v. Root, 99 Mass. 546; Weld v. Oliver, 21 Pick. 559; Moore v. Baker, 30 N. E. 629; Downs v. Finnegan, 56 N. W. 981; Anderson v. Bank, 64 N. W. 114; Bent v. Barnes, Id. 428; White v. Brooks, 43 N. H. 402; Tyler v. Taylor, 8 Barb. 585; Wilson & Gibbs v. Reed, 3 Johns 174; Reusens v. Construction Co., 22 Fed. 522; Lovell v. Life Ins. Co., 111 U. S. 264.

In the absence of evidence to the contrary, the value of the notes and mortgages was correctly found to be their face.   § 4615, Comp. Laws; Hilliard on Remedies for Torts, 670; Sedgwick on Damages, 609; Holt v. Van Epps, 1 Dak. 217.

CORSON, P. J.   This is an action to recover $37,000, claimed by plaintiff to be due him from the defendant as the result of certain business transactions set out in plaintiff's complaint.   The defendant, in addition to certain denials, pleaded

as a defense that in the transactions set out in the complaint the plaintiff and defendant were partners, and that there had not been any settlement of their partnership transactions between them. The case was tried by a referree, who found for the plaintiff for the full amount claimed. This amount was reduced by various sums remitted before and after judgment, leaving a balance of over $21,000. From this judgment, and order denying a new trial, the defendant appeals.

Between 1878 and 1893, the plaintiff made numerous farm loans in Dakota, which the referee finds were made under the following understanding or agreement between the plaintiff and defendant: "That in the latter part of the year 1878 the plaintiff saw the defendant at defendant's office in said city of Milwaukee, and there had a conversation with him concerning the making of farm loans in the then territory of Dakota, the result of which conversation was that the defendant gave to plaintiff a number of blank applications for loans, with directions to plaintiff to procure and forward to defendant some applications for loans * * * and stated to plaintiff, that if satisfied with such applications, he would send plaintiff funds with which to make such loans as defendant should accept from among such applications; and further stated to plaintiff that upon the application so accepted and filled by the defendant the plaintiff should allow the defendant such portions of the commissions received upon said loans from the borrowers as plaintiff should think fair; and if thereupon defendant was not satisfied with what plaintiff allowed the defendant as commissions, the plaintiff would hear from the defendant concerning the same." The plaintiff also furnished farm lands for defendant, which the referee finds were purchased under the following agreement: "That some time subsequent to the arrangement between the plaintiff and defendant for making loans as aforesaid, the defendant requested the plaintiff to purchase for the defendant farm lands in the territory of Dakota, whenever the plaintiff should have an opportunity to purchase the same

at a bargain, and that the defendant agreed with the plaintiff that he, the defendant, would hold such lands so purchased until the same could be sold at a profit, either by plaintiff or defendant; and when so sold would give to plaintiff for his services in purchasing said lands, and in looking after and paying of taxes on them and renting them, one-half of the profit obtained for such lands over and above the cost thereof, and seven per cent interest thereon.'' These findings are fully sustained by the evidence, the plaintiff and defendant agreeing substantially as to the terms under which the loans and purchases were made. The defendant testified as follows: ''Mr. Grigsby has [been] associated with me in the conduct of my loan business in several counties in Southeastern Dakota. Mr. Grigsby gathered applications from the parties who desired to borrow money, and forward the same to me. I would select such as I desired, and forward the money to make the same, reject the rest, and return the applications to him. That is as comprehensive as I can make it. This method of transacting business with him was the result of an agreement between myself and him. That agreement was that we should charge a certain commission for making the loans that were accepted, and such commission should be divided equally between us. These commissions were paid sometimes in cash, but most generally by giving a mortgage on the property upon which the loans were made, which mortgage was in all cases a second mortgage. Mr. Grigsby and myself each owned one-half, respectively, in such second mortgage. These commission mortgages were generally payable in installments running over five years, and the amount due to Mr. Grigsby was payable to him when it was received by me. * * * In 1879, I commenced to buy lands in Southeastern Dakota, through Mr. Grigsby. On all such lands that I purchased and acquired title to myself, he was to have one-half interest in the profits when sold, after allowing me seven per cent interest on the money which I had advanced for the purchase price, taxes, and other expenses which I

might have been to. * * * There are still a great many commission mortgages, due and not due, unpaid, one-half of which belongs to Mr. Grigsby, and one-half to myself; and there are still in the neighborhood of four thousand acres of land upon which he has an interest, should [it] appear at the sale of the same that there is a profit over and above reimbursing me for all I have advanced as purchase price, taxes, and other costs, and after allowing myself seven per cent interest on such advances." In the early loans the commissions were collected in cash, and divided between the parties as the same were received; but later second mortgages were taken for the commissions, in the name of the defendant. The methods of proceeding in regard to these loans are thus stated in the findings of the referee: "That the instructions and directions given by defendant to plaintiff concerning the making of said loans were always made so as to apply, not in a general manner concerning the conduct of said business, but, on the contrary, each application that was received by the defendant, and by him accepted, was returned by him to plaintiff, together with a separate letter of instructions, as to making that particular loan, and with a check for the amount of money to be loaned in that particular case. That plaintiff, upon the making and completing of the loans so accepted and filled by the defendant, thereupon sent to defendant all papers, notes, mortgages, and abstracts of title with each completed loan, and also sent the defendant one-half the amount of money which the plaintiff had received from the borrowers as commissions for procuring and making of said loans. * * * That subsequently in the progress of said loan business plaintiff and defendant adopted a method of securing their commissions from the borrowers by taking a commission note or notes from the borrowers, which said commission note or notes were secured by a second mortgage upon the property upon which the principal loan was negotiated, and which said commission note and mortgage were made payable in each instance to the defendant,

and were at the time of the taking thereof sent by plaintiff to defendant at Milwaukee, Wisconsin, and the record of the same was kept by the plaintiff upon the books in his office at Sioux Falls." At the time of the commencement of this action a large quantity of the farm lands purchased by the plaintiff for the defendant had been disposed of by the defendant, and for which no division of the profits had been made. In 1893 the defendant made a general assignment for the benefit of creditors, and as to the property therein included the referee finds as follows: "And I further find that under and by virtue of the said assignment the said William H. Momsen, assignee, took possession of all the personal property in the name of the said defendant, and claims the right of possession of all the real property in the name of the said defendant in the state of South Dakota, and especially that he took and retains the possession of all the commission notes and second mortgages ·taken in the name of the defendant in the state of South Dakota, still outstanding and unpaid, in which the plaintiff herein has an interest by reason of the facts herein found." It further appears from the evidence that the plaintiff resided at Sioux Falls, and kept an office and clerks at his own individual expense; and that the defendant resided at Milwaukee, where he had an office, and a number of clerks, maintained at his own individual expense; and that both he and plaintiff did a large amount of other business not connected with the loans or purchases above mentioned. The referee found for the plaintiff one-half of the face value of the commission notes and mortgages, with the interest due thereon. He also found for the plaintiff one-half of the profits realized from the sales of farm lands which had not been paid over to the plaintiff. There were numerous other findings, not necessary to be considered in the determination of the questions presented on this appeal.

Appellant relies for a reversal of the judgment in this case upon three grounds, namely: (1) That the allegations in the

complaint, evidence, and findings establish a co-partnership between the parties and hence this action cannot be maintained; (2) that no conversion of the commission notes and mortgages was established, the title to the plaintiff's interest not passing to the assignee by the general assignment; and (3) that the referee erred in finding for plaintiff the face value of the commission notes and mortgages. The Civil Code of this state thus defines a partnership: "Partnership is the association of two or more persons for the purpose of carrying on business together, and dividing its profits between them." Sec. 4027. And Sec. 4029 provides as follows: "A partnership can be formed only by the consent of all the parties thereto, and therefore no new partner can be admitted into a partnership without the consent of every existing member thereof." These sections embody the common law doctrine of partnership. They enunciate no new principle. A partnership, therefore, as between the parties, is the association of two or more persons, by their consent and agreement, for the purpose of carrying on business together, and dividing the profits. As to whether or not there is a partnership between themselves is to be determined mainly by the intention of the parties, and the court will ordinarily carry out that intention. This is well illustrated in Runnels v. Woffat, 41 N. W. 224. The supreme court of Michigan held in that case that, notwithstanding the plaintiff and defendant owned ferryboats together, ran them as such, paid the expenses out of the earnings, and divided the profits, they were not partners as between themselves; that court saying: "They had no partnership name; did not understand as between themselves that they were partners. This certainly did not make a partnership as between themselves, whatever their relations were to the public." The original understanding of the parties as to making the loans clearly did not contemplate any partnership; neither did that as to the purchase of farm lands; and the acts of the parties during the 15 years in which they continued to do business to-

gether were entirely inconsistent with any theory of a partnership. The plaintiff was, as we have seen, a resident of Sioux Falls, in this state, and he furnished himself with an office and clerks there, at his own individual expense. The defendant, as we have seen, resided in Milwaukee, Wis., where he provided his own office, clerks, etc., at his own expense. It is not shown that any partnership name was ever used, or that either ever at any time, directly or indirectly, admitted the existence of any partnership between them, prior to the commencement of this action. The plaintiff had no authority to bind the defendant by any agreement relating to the loans. He could fill out applications and submit them to the defendant, who could accept or reject them, or, as he says, select such as he desired, rejecting the others, and returning them to the plaintiff. We are clearly of the opinion that as to the loans there was no partnership, and that the one-half of the commissions received by plaintiff was in the nature of compensation for his services. In the purchase of lands by the plaintiff for the defendant there is one essential element of a partnership, namely, the division of the profits. But this alone does not constitute one a partner. A participation of one in the profits of a business without having an interest in or right to control the business does not make him a partner. Something more is essential. He must have an interest in the business, with a right to control, and thus have the right to profits as the result of the capital and industry in which all concerned are interested, and not as a measure of compensation merely. Conklin v: Barton, 43 Barb. 435; Dutcher v. Buck (Mich.) 55 N. W. 676; Beecher v. Bush, 45 Mich. 188, 7 N. W. 785. In the latter case the supreme court of Michigan, speaking by Mr. Justice COOLEY, says: "Except when one allows the public or individual dealers to be deceived by the appearance of partnership when none exists, he is never to be charged as a partner unless by contract and with intent he has formed a relation in which the elements of a partnership are to be found. And what are these? At the very least the

following: Community of interest in some lawful commerce or business, for the conduct of which the parties are mutually principals of and agents for each other, with general powers within the scope of the business, which powers, however, by agreement between the parties themselves, may be restricted at option, to the extent even of making one the sole agent of the others and of the business." The plaintiff and defendant were not mutually principals or agents of each other. The plaintiff could make no contract for the purchase or sale of any land that would bind the defendant. He could look up farm lands that were for sale, and recommend their purchase to the defendant, but the defendant might or might not conclude the purchase; the same with regard to the sales. The title was in the defendant and he could dispose of the lands purchased as he might think proper. The conclusion seems to be irresistible that the plaintiff was in no true sense of that term a partner, but was merely an agent of defendant, with very limited powers; and his share in the profits of the sales, if there were any, was merely as compensation for purchasing the lands for the defendant, and in looking after and paying taxes, renting them, etc. Having no interest in or control over the lands or money with which they were purchased, and no authority to bind the defendant in any manner pertaining thereto, he was not a partner as between themselves. The learned counsel for the appellant have cited a very large number of cases, nearly all of which we have carefully examined, but none of them, in our view, sustain their theory of partnership. As said by Mr. Justice COOLEY in Beecher v. Bush, *supra*: "If parties intend no partnership, the court should give effect to their intention, unless somebody has been deceived by their acting, or assuming to act, as partners; and any such case must stand upon its peculiar facts and upon special equities." The referee was clearly right, therefore, in holding that the facts proven were not sufficient to establish a partnership as between the parties.

The next contention of appellant is that there was no conversion of the commission notes and mortgages, and that the

referee erred in so finding.    As will have been observed, all these notes and mortgages were taken in the name of the defendant, but the referee finds that plaintiff had a one-half interest in them.    They were, therefore, tenants in common as to these notes and mortgages, notwithstanding they were taken in the name of the defendant.    The rule seems to be established in this country that if one tenant in common sells or disposes of the chattels his co tenant may maintain trover against him for their conversion, and recover the value of his interest therein.    4 Am. & Eng. Enc. Law, p. 114.    See, also, cases cited.    Judge COOLEY, in his work on Torts, takes the same view, and cites a large number of authorities.    Cooley, Torts (2nd Ed.) p. 533; Delaney v. Root, 99 Mass. 546; Dyckman v. Valiente, 42 N. Y. 549; Weld v. Oliver, 21 Pick. 559; Lovell v. Insurance Co., 111 U. S. 264, 4 Sup. Ct. 390; Reusens v. Construction Co., 22 Fed. 522; Wilson v. Reed, 3 Johns. 174; Tyler v. Taylor, 8 Barb. 585; White v. Brooks, 43 N. H. 402; Bent v. Barnes (Wis.) 64 N. W. 428; Anderson v. Bank (N. D.) 64 N. W. 114; Downs v. Finnegan (Minn.) 59 N. W. 981; Moore v. Baker (Ind. App.) 30 N. E. 629.

The appellant contends that the assignee only acquired the interest of the defendant in these notes and mortgages by the assignment, and that the plaintiff's remedy is against him, and the plaintiff may assert his right also against the property in the hands of the assignee.    We do not deem it necessary to decide either of these questions in this case.    Assuming, as contended, that plaintiff might have a right of action against the assignee, and might have a remedy as against the property, still the plaintiff retains his remedy as against his co-tenant. The law does not impose upon the plaintiff the duty of proceeding against the assignee or the property.    When the defendant transferred these notes and mortgages to the assignee unconditionally, and put them beyond his control, he, in law, converted them, and became liable to the plaintiff for the value of his interest therein in an action against him.    We are of the opinion

therefore, that the referee correctly held that the action for conversion could be maintained against the defendant.

It is also contended that the referee erred in finding for the plaintiff one-half of the face value of the notes and mortgages But, in the absence of evidence on the part of the defendant as to their real value, it was the duty of the referee to find for their face value.   Sec. 4615, Comp. Laws, provides that "for the purpose of estimating damages, the value of an instrument in writing is presumed to be equal to that of the property to which it entitles its owner." The amount, therefore, appearing to be due upon the notes and mortgages, will, in the absence of proof to the contrary, be presumed to be the amount of money the notes and mortgages were given to secure.   Cosand v. Bunker, 2 S. D. 294, 50 N. W. 84; Holt v. Van Epps, 1 Dak. 217, 46 N. W. 689; Booth v. Powers, 56 N. Y. 22; Thayer v. Manley, 73 N. Y. 305.   Finding no error in the record, the judgment and order denying a new trial are affirmed.