C. F. & G. W. EDDY v. LAMB.[1]

1. APPEAL AND ERROR—PRESUMPTIONS—EVIDENCE.

Where, in an action for a balance due the consignee of certain
hay, the findings of both the referee and the circuit judge
state that there were reports that certain of the hay was off
grade, it must be presumed, in the absence of the evidence,
that there was some showing of such reports.

2. REFERENCE—REPORT OF REFEREE—REVIEW—QUESTION OF FACT.

The finding of a referee upon a question of fact supported by
evidence is not subject to review.

3. SAME—REPORT—EXCEPTIONS—FINDING OF COURT—ERROR.

Where a referee found that there were a number of reports
that certain hay was off grade, a finding by the circuit judge,
on exceptions to the referee's report, that there were few such
reports prior to a certain date was not fatal error, unless such
finding made a difference in the legal status requiring the
reversal of the referee's conclusion of law.

4. SAME—EXCEPTIONS—NECESSITY.

Where a referee was not requested to confine his findings as to
certain reports to a period prior to a certain date, and no ex-
ception was taken to his failure to do so, the question of fact
was not reviewable on exceptions to his report.

5. SAME — FINDING OF REFEREE — MIXED QUESTION OF FACT AND
LAW — PRACTICAL CONSTRUCTION OF CONTRACT — CONCLUSIVE-
NESS OF FINDING.

The question whether parties have, by their conduct and acqui-
escence, given a practical construction to their contract, is one
of mixed fact and law, the determination of which by a referee
is conclusive unless totally unsupported by the facts stated
in his report.

Error to Lapeer; Dodds, J., presiding. Submitted
June 20, 1907. (Docket Nos. 80, 81.) Decided October
4, 1907. Rehearing denied January 6, 1908.

Assumpsit by C. F. & G. W. Eddy against Horace

[1] The opinion filed on the original hearing in this case was with-
held from publication pending the rehearing.

Lamb and George R. Lamb, copartners as Horace Lamb
& Co., for money had and received. There was judg-
ment for defendants, and both parties bring error. Re-
versed, and judgment entered for plaintiff.

*Geer, Williams & Halpin*, for plaintiff.

*William E. Brown* and *R. L. Campbell*, for defend-
ants.

HOOKER, J.   The plaintiff, a foreign corporation, sued
defendants, copartners, for a small balance claimed to be
due upon transactions involving the shipment, from the
latter to the former, of several hundred car loads of hay.
The cause was sent to a referee, who filed his conclusions
of fact and law, exceptions to which were heard, and a
judgment for the defendants was rendered, in the circuit
court.   The cause is before us on separate appeals, taken
by the respective parties.   We dispose of both together.

The plaintiff claimed a balance due to it of $762.98 and
interest, while the defendants claimed that there was a
sum due them amounting to $1,875.39 and interest.   The
judgment was for $265.22 in defendants' favor.   The hay
was shipped under an oral arrangement made between the
parties, and the referee's report shows that he found that
this arrangement amounted to a contract, whereby the
defendants were to ship a quantity of hay for shipping or
export purposes, at $10 per ton f. o. b. Boston (Mass.);
that subsequently the price on shipments to follow was re-
duced to $9.20 per ton by agreement of the parties, and
later still to $9.10; that on hay of this grade there was a
freight rate of 23 cents a ton on car lots with a minimum
of 20,000 lbs.; that hay was shipped under each of these
agreements; that it was defendants' practice to mail to
plaintiff invoices of shipments, giving car numbers, and
Imlay City weight, and the price computed at the con-
tract price, less freight at the 23-cent rate, and advising
plaintiff of the amount of the draft, which accompanied

the bill of lading. Shipments were made to defendants' own order, and bills of lading with drafts attached were sent through their banker. The plaintiff paid the drafts on all cars sent. It also paid the freight; all shipments received at Boston were inspected, by sworn inspectors, appointed by the city, employed and paid by the plaintiff, and it was furnished with certificates of inspection; the plaintiff reported to the defendants by numerous sales reports which referred to the respective cars by number, stating the amount of freight paid on each car, the Boston weight, the price per ton at which they were credited to the defendants, the amount advanced, and the balance due either party, after deducting from such credit the amount of freight and advances; in a number of instances the Boston inspection showed that the hay was not up to grade and in such instances the hay was sold by the plaintiff to the best advantage and the amount realized was credited and reported to defendants, less a commission of 50 cents a ton; freight charges paid by the plaintiff were excessive in some instances, but to what extent the referee was unable to determine, but plaintiff recovered from the railroad such excess charges $213.81.

The referee gave plaintiff credits as follows:

| | | |
|---|---:|---:|
| Balance on old account agreed on | $8 | 55 |
| Drafts paid | 17,011 | 35 |
| Freights paid | 17,507 | 70 |
| Total | $34,527 | 60 |

Defendants were given credit as follows:

| | | |
|---|---:|---:|
| Freights recovered | $213 | 81 |
| Am't due on shipment on Boston inspection | 33,497 | 14 |
| Total | $33,710 | 95 |

One car of hay was burned in the Boston railroad yards, and defendants were credited with this at $53.67. The referee found a balance due to the plaintiff of $762.98 plus interest, aggregating $1,087.62.

The circuit judge modified the finding for the following reasons: He said that the referee's report failed to state that there was a warranty of the grade of hay, and that no exception was taken thereto by the plaintiff. That it was the duty of the plaintiff to report the fact that the hay was not up to grade. This it did not do except in a few instances, but instead converted the hay and reported the price, with which it credited the defendants, which often was less than the contract price. He added that after receiving such reports the defendants made no complaint but continued to ship until June 21, 1898. "After that date cars were cut in price, and there is no finding that defendants made any statement or committed any act that could lead the plaintiff to believe that they intended to give it the right to cut the price of the hay," and that, having wrongfully sold them, it became liable for the hay at the contract price, a difference of $947.61, which he credited to defendants' account, as stated by the referee, and directed a judgment in their favor for $264.36. It was actually entered by stipulation for $265.22, as already stated.

The plaintiff's record does not contain the testimony taken before the referee. Its exceptions to the judgment are:

1. To the finding of the circuit judge that the plaintiff did not, except in a few instances, notify the defendants when car loads of hay were found not to be up to grade.

2. In finding that there was nothing in the report that showed any intention on the part of defendants to allow the balance of the hay disposed of after June 21, 1898, to be cut in price on account of its condition.

3. In finding that the amount of hay in the 83 cars should have been allowed to the defendants at the contract price.

5 and 6. To the refusal of judgment for plaintiff and to judgment for defendants.

We must conclude that the testimony showed something regarding the reports of hay being off grade because the findings of both the referee and the circuit judge say

so. The number of said reports was a question of fact and if the referee passed upon it the question was not subject to review. *People* v. *Wayne Circuit Judge,* 18 Mich. 483; *Ortmann* v. *Wilson,* 23 Mich. 269, and note; *Abbott* v. *Mathews,* 26 Mich. 176; *St. Denis* v. *Saunders,* 36 Mich. 369; *Runnels* v. *Moffat,* 73 Mich. 199.

The referee found that there were a number of such instances. The judge found that there were but few prior to June 21st. We are of the opinion that this statement in his opinion was not a fatal error, unless we are to say that it made a difference in the legal status justifying the reversal of the referee's conclusion of law, when, under his own finding, it would have been sound.

The second assignment is based upon a finding of fact also made by the circuit judge. The referee had made a general finding as to reports. He did not confine them to the period prior to June 21st, nor was he requested to, nor was an exception taken to his failure to do so. There was therefore no occasion for the review of this question of fact. Upon both of these findings of fact the referee was called upon to determine the question whether the parties had, by their conduct and acquiescence, given a practical construction to the contract. That involved a question of fact also, although its decision involved a question of law, and the circuit judge could pass upon it only by reason of the total insufficiency of the facts stated in the report to constitute a legal justification for the application of the rule. Had this been a trial before a jury the court should have left the question of acquiescence to the jury under proper instructions as to the law, upon the claim of the plaintiff, unless the proof was sufficient to conclusively show it, which is unnecessary to decide, and it was before the referee exactly in that way. The question was a mixed question of law and fact. The findings of the referee should not have been reversed, if to do so it was necessary to vary his findings of fact. We think that it was so, and therefore the court erred in holding that the defendants should have been credited with the item.

Counsel for defendants, in their appeal, have raised and discussed many questions that become unimportant by reason of the findings of the referee. Many of these do not appear to have been passed upon or urged before the circuit judge. A large number relate to the admission of evidence and the conclusions of fact drawn by the referee. Counsel have not confined their assignment of errors to those alleged to have been committed by the circuit judge, but have assigned error upon many of the rulings of the referee, with which we can have nothing to do unless the action of the circuit judge thereon is alleged and shown. Eliminating these last, there are but three assignments of error committed by the circuit judge left. The first two have been covered and disposed of by what has been said. The other is an allegation of error in refusing to render judgment for $1,980 for defendants.

Practically on both records the case is resolved into the question whether the circuit judge erred in crediting the defendants with $947, and upon the grounds heretofore stated. We feel constrained to say that he did, for the reason that the referee's determination was final upon the question of the practical construction of the contract by the parties.

The record permits us and we therefore order judgment here for the plaintiff in conformity to the referee's report for $1,087.62, with interest at six per cent. from September 23, 1905, with costs of all courts. The plaintiff will recover costs of all courts and on both appeals.

BLAIR, MONTGOMERY, OSTRANDER, and MOORE, JJ., concurred.