## In re GIBSON.

(District Court, D. South Dakota, S. D. October 28, 1911.)

No. 650.

1. **PARTNERSHIP (§ 20\*)—CREATION OF RELATION—COMMUNITY OF INTEREST IN BUSINESS.**

    Under Civ. Code S. D. § 1723, which provides that a partnership is the association of two or more persons for the purpose of carrying on business together and dividing its profits between them, a business conducted in the name of a bankrupt and his brother as partners was not a partnership business, but the individual business of the bankrupt, where his brother had no capital invested and worked for a salary, and there was no agreement between them that he should share in either profits or losses.

    [Ed. Note.—For other cases, see Partnership, Dec. Dig. § 20.\*

    For other definitions, see Words and Phrases, vol. 6, pp. 5191–5202; vol. 8, pp. 7746, 7747.]

2. **BANKRUPTCY (§ 149\*)—PROPERTY PASSING TO TRUSTEE.**

    On the bankruptcy of a person who was, in fact, the sole owner of a business, although it was conducted in the name of himself and another as partners, the property and assets of such business passed to his trustee as his individual property without regard to any liability of the ostensible partner to the creditors.

    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 149.\*]

3. **BANKRUPTCY (§ 303\*)—VOIDABLE PREFERENCE—KNOWLEDGE OF CREDITOR.**

    Evidence *held* to sustain the finding that an assignment of accounts by a bankrupt to a creditor as security within four months prior to the bankruptcy was made when the bankrupt was insolvent and under circumstances which gave the creditor reasonable cause to believe that a preference was intended so as to render the transfer voidable.

    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 303.\*]

In the matter of Arthur B. Gibson, bankrupt. On review of order of referee. Affirmed.

Boyce & Warren, for petitioner.
Bailey & Voorhees, for trustee.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ELLIOTT, District Judge. This is a petition for review of an order made by the referee in bankruptcy, decreeing an assignment of certain book accounts of the face value of about $1,000 as collateral to the claim of Knapp & Spencer Company against Arthur B. Gibson, bankrupt, amounting to about $2,500, a fraudulent preference within the prohibition of Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), and therefore void as against the trustee.

A statement of facts is as follows:

Arthur B. Gibson was adjudicated a voluntary bankrupt on the 6th day of December, 1910, and John W. Jackson of Kennebec was appointed, and now is, trustee in bankruptcy of his estate.

It was contended in behalf of the trustee: That Arthur B. Gibson was an individual trader and did business under the name and style of Gibson Bros., and was engaged in the hardware business at Kennebec, S. D., prior to December 6, 1910. That Arthur B. Gibson did business under the name of Gibson Bros. and purchased goods under said name, and had working for him his brother, Frank L. Gibson, whom he held out to be a member of the alleged firm of Gibson Bros., but Frank Gibson was not a partner. He had not contributed anything to the capital of the business, had no interest therein, did not participate in any way in the profits of the business, and there was no contract of partnership, and no understanding whereby he was to bear any part of the losses thereof, and "Gibson Bros." was in fact not a partnership, but the style under which Arthur B. Gibson, as an individual, did business, which contention was sustained by the referee, as more fully appears by the findings of fact made and entered by the referee as follows:

"First. That Arthur B. Gibson was adjudicated a voluntary bankrupt on the 6th day of December, 1910, and subsequently John W. Jackson of Kennebec, S. D., was appointed, and now is, the trustee in bankruptcy of said bankrupt's estate.

"Second. That said Arthur B. Gibson was an individual trader and did business under the name and style of Gibson Bros., and was engaged in the hardware and implement business at Kennebec, S. D., and was doing business there for several years prior to said December 6, 1910.

"Third. That said Arthur B. Gibson did business under the name of Gibson Bros. and purchased goods under said name, and had working for him his brother, Frank Gibson, whom he held out to be a member of the alleged firm of Gibson Bros.; yet, nevertheless, the said Frank Gibson was not a partner. That the said Frank Gibson had not contributed anything to the capital of the business, did not have an interest therein, and did not participate in any way in the profits of the business or bear any part of the losses thereof, and the alleged firm of Gibson Bros. was, in fact, not a partnership, but the style under which Arthur B. Gibson, as an individual, did business.

"Fourth. That on or about the 17th day of August, 1910, the said Arthur B. Gibson was indebted to Knapp & Spencer Company in a large amount exceeding the sum of twenty-five hundred ($2,500) dollars. That on said date M. E. Culhane, attorney at law of Brookings, S. D., who had the Knapp & Spencer Company claim in his hands for collection, called on Arthur B. Gibson and demanded payment of said account. That Arthur B. Gibson stated to said M. E. Culhane that he could not pay said account, and thereupon an arrangement was made whereby the said Arthur B. Gibson signed and delivered to M. E. Culhane an assignment of certain book accounts or bills receivable due and owing to the said Arthur B. Gibson, a list of which said ac-

counts is set forth in the proof of claim of the Knapp & Spencer Company, filed with the referee, to which reference is made herein. That the said accounts were assigned to the said Knapp & Spencer Company as collateral security for its indebtedness against Arthur B. Gibson.

"Fifth. That there was no change of possession of said accounts, but that said accounts were left in the hands of Arthur B. Gibson for collection, and the statement of accounts or the book containing the same were not transferred, and none of the debtors of the said Arthur B. Gibson were notified of the said assignment and none of the creditors of the said Arthur B. Gibson were notified thereof. That the said Arthur B. Gibson retained possession of said accounts, statements of account, and books containing said accounts up until he was adjudicated a bankrupt, and said accounts and statements thereof and books containing the same are now in the possession of John W. Jackson, trustee, and were in his possession at the time of the filing of the petition of the Knapp & Spencer Company.

"Sixth. That at the time the said book accounts or bills receivable were transferred to the said Knapp & Spencer Company the said Arthur B. Gibson was insolvent.

"Seventh. That at the time said book accounts were assigned the said Knapp & Spencer Company, through its agent and attorney, M. E. Culhane, had notice of sufficient facts to put it upon inquiry as to the financial condition of Arthur B. Gibson, which inquiry would have disclosed that the said Arthur B. Gibson was insolvent, and that by transferring said book accounts or bills receivable, he intended to prefer the said Knapp & Spencer Company over and above his other creditors in and of the same class.

"Eighth. That at the time said book accounts or bills receivable were transferred the said Arthur B. Gibson intended to prefer the said Knapp & Spencer Company over and above his other creditors in and of the same class.

"Ninth. That at the time said book accounts or bills receivable were transferred the said Knapp & Spencer Company had reasonable cause to believe that a preference was intended.

"Tenth. That, if the said Knapp & Spencer Company is permitted and allowed to keep and retain said book accounts or bills receivable as collateral security for its indebtedness against the said Arthur B. Gibson, it will be permitted to receive a greater percentage of its claim against the said Arthur B. Gibson than his other creditors in and of the same class will receive.

"Eleventh. That the assets belonging to the estate of said Arthur B. Gibson are insufficient to pay in full all of the claims that have been proved and allowed against his estate, and that said assets are, in fact, sufficient to pay only a small percentage of said claims."

The following questions are involved in this review:

(1) Was Gibson Bros. a partnership composed of Arthur B. Gibson and Frank L. Gibson, or did Arthur B. Gibson do business in the name and style of Gibson Bros., as an individual?

(2) If Gibson Bros. was a partnership composed of the two partners, and the partnership owned the property in controversy, did the title thereto pass to the trustee in bankruptcy upon the adjudication of Arthur B. Gibson, one of the partners, a bankrupt?

(3) If Gibson Bros. was not a partnership and did not consist of the two persons, but was the name and style under which Arthur B. Gibson individually did business, did this property used and held by him under that name pass to the trustee of Arthur B. Gibson individually adjudged a bankrupt?

(4) Was the transfer of these accounts under the conditions set forth in the record herein a fraudulent preference of a creditor within the prohibition of the bankruptcy act, and therefore void as against the trustee?

There might be a further question as to the validity of the transfer, but, in the view I take of the preceding questions, I deem it unnecessary to determine more.

[1] Taking the questions up in the order above set forth, the testimony of the bankrupt is very positive, and is in no way disputed that, at the suggestion of the banker through whom he purchased the business, he had his brother guarantee a note given for a part of the purchase price, and commenced doing business himself individually in the name of Gibson Bros.; that there never was any partnership; that there never was any agreement between himself and his brother, Frank L. Gibson, whereby his brother had any interest in the business or in its management, or whereby he was to share in the profits or losses. He simply worked for him by the month, and there was the hope that, if everything went all right some time in the future he would put some money into the business and take an interest in it, but that the entire business and property was the individual business and property of the bankrupt.

Section 1723 of the Civil Code of the state of South Dakota provides that a partnership is the association of two or more persons for the purpose of carrying on business together, and dividing its profits between them. "A partnership, therefore, as between the partners, is the association of two or more persons by their consent and agreement for the purpose of carrying on business together, and dividing the profits. As to whether or not there is a partnership between themselves is to be determined mainly by the intention of the partners, and the court will ordinarily carry out that intention." Grigsby v. Day, 9 S. D. 592, 70 N. W. 881; Runnels v. Moffat, 73 Mich. 188, 41 N. W. 224. "A participation of one in the profits of the business without having an interest in or right to control the business does not make him a partner. He must have an interest in the business with a right to control, and thus have a right to profits as the result of capital and industry in which all concerned are interested, and not as a measure of compensation merely." Grigsby v. Day, 9 S. D. 593, 70 N. W. 881 (with citations). The finding of the referee under the evidence in this case, viewed in the light of this statute and its interpretation by the Supreme Court of the state, is clearly right, and in my judgment there is absolutely nothing in this record to sustain a different finding as to question No. 1.

The second question above stated, in view of the answer to question No. 1, is immaterial. Suffice it to say that, if the property in controversy did in fact belong to a firm consisting of Gibson Bros., the title thereto would not pass to the trustee of either partner adjudicated a bankrupt.

[2] As to the third question above set forth, I am of the opinion that the title to the property used in and about the business of Gibson Bros., being the individual property of the bankrupt, Arthur B. Gibson, and owned by him individually, passed to the trustee in this proceeding in bankruptcy. The bankrupt, Arthur B. Gibson, and his brother, Frank L. Gibson, it is very clear from the testimony in this case were not partners as respects each other. If, for the pur-

pose of argument, it be assumed that Frank L. Gibson permitted himself to be held out as a partner to creditors of Arthur B. Gibson, and therefore he has a liability to them as such, his liability is only a personal liability to them, and their remedies against him are in no way affected by this proceeding. There was no agreement between Arthur B. Gibson and Frank L. Gibson that gave Frank L. Gibson any property interest in the business or assets of Gibson Bros., and none of the rights of a partner therein. The assets, therefore, of the business conducted at Kennebec in the name of Gibson Bros. were the sole property of Arthur B. Gibson. The entire title thereto was in Arthur B. Gibson only, and all of the debts of Arthur B. Gibson, whether belonging to this hardware business conducted in the name of Gibson Bros., or outside of it, are alike provable against these assets and all of his other property as one individual estate. Frank L. Gibson cannot call him to account as a partner, and he could not have a receiver appointed in any attempt to wind up Arthur B. Gibson's business conducted in the name of Gibson Bros. Assuming, therefore, that Frank L. Gibson may have so conducted himself that there is a liability against him, I think the bankruptcy proceeding in this case was properly conducted, and that the entire property in and about the hardware business conducted at Kennebec, S. D., by Arthur B. Gibson, in the name of Gibson Bros., is a part of the estate of Arthur B. Gibson, and the title thereto passed to his trustee in bankruptcy; that the entire property is the individual estate of Arthur B. Gibson, and the trustee of Arthur B. Gibson alone could take it. In re Kenney (D. C.) 97 Fed. 554.

[3] Was the transfer of these accounts under the conditions set forth in the record herein a fraudulent preference of a creditor within the prohibition of the bankruptcy act, and therefore void as against the trustee? In my judgment the findings of the referee set forth with reference to this question are sustained by the evidence of the bankrupt and the witness Culhane.

After a careful examination of all of the evidence certified upon this review, I am convinced there is sufficient evidence in the record of the insolvency of the bankrupt on the 17th day of August, 1910. It conclusively appears that as a matter of fact Knapp & Spencer Company on that date by the assignment of $1,000 in accounts, the same being all of the accounts upon the books of said bankrupt, then in his possession, were actually given a preference over the other creditors of the bankrupt. Mr. Culhane, the attorney for Knapp & Spencer Company, was on the ground, with access to the books of the bankrupt, knew that he had not a dollar to apply upon this large account, past due. Under the circumstances outlined in this evidence, this representative of Knapp & Spencer Company was a lawyer, an adjuster, a man of experience, with access to the stock of merchandise the books, and in a position to see and know the methods of the bankrupt's doing business.

The fact that the bankrupt was a "mere boy," the large indebtedness at the bank, and his knowledge that they could not extend him further credit, the taking of notes, $500 due within a few days, and

the balance of the notes maturing at the rate of $125 every ten days, and that Mr. Culhane admitted that this arrangement practically meant that the bankrupt would have to pay something like $4,000 within the succeeding four months if he took care of his other trade obligations, the fact that he knew that the mortgage for $1,800 and accrued interest and costs had been foreclosed upon the farm of 160 acres the preceding January, that the homestead of the bankrupt in Kennebec was incumbered, that the business lot owned in Kennebec was incumbered, that the threshing machine engine was incumbered, the large indebtedness disclosed, compared with the value of the property of the bankrupt, with other facts appearing in the evidence, all taken together, were, in my judgment, facts that would not only put a reasonably prudent person upon inquiry, but must have convinced this representative of the petitioner, and at least must have given him reasonable cause to believe that the intent and effect of this assignment of· accounts was to give the petitioner a preference.

Under the facts and circumstances appearing in this evidence, the representative of Knapp & Spencer Company in my judgment had reasonable cause to believe and knew that the bankrupt at that time was insolvent, and that the intent and effect of this assignment of accounts was to give the petitioner a preference over other creditors. I think it sufficiently appears from the record that he was there for the purpose of securing this preference, and took this assignment with a knowledge of the insolvency of the bankrupt, and therefore that it was a fraudulent preference of creditors within the prohibition of the bankruptcy act, and void as against the trustee.

It is unnecessary therefore to consider the question of the invalidity of the transfer for any other reason.

Let judgment be entered affirming the findings of fact, and in all things affirming the judgment of the referee brought here for review.